## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Misc. Action No. 07-549 (JMF) |
| JACKSON HOSPITAL CORP., dba KENTUCKY RIVER MEDICAL CENTER, | ) ) ) ) | |
| Respondent. | ) ) ) | |

### MEMORANDUM OPINION

This case has been referred to me by the U.S. Court of Appeals for the D.C. Circuit in my capacity as a special master.  Now pending are the parties' remaining discovery disputes.  See Memorandum in Support of Motion to Compel [#14] ("MTC") and Memorandum in Support of Privileges Asserted Pursuant to Federal Rule of Civil Procedure 26(b)(5) [#12] (" Mem. Sup.").

### I.   Background.

The United Steelworkers of America, AFL-CIO-CLC ("the Union") filed charges with the National Labor Relations Board ("NLRB") under the National Labor Relations Act, 29 U.S.C. § 151[1] et seq. ("NLRA" or "the Act"), against Jackson Hospital Corporation, doing business as Kentucky River Medical Center ("KRMC").  The Union alleged that KRMC was engaging in unfair labor practices, including refusing to meet and bargain with the Union; threatening, punishing, and discharging employees who participated in Union activities; taking

---

[1] All references to statutes herein refer to the versions available on Lexis or Westlaw.

action without consulting with the Union; videotaping Union activities; and posting anti-Union signs. The NLRB General Counsel decided to issue complaints based on the charges filed by the Union and by individual members. Those complaints were tried before Administrative Law Judge David Evans on various dates throughout 2001, and Judge Evans issued his voluminous decision on February 20, 2002.

Judge Evans concluded that KRMC had engaged in various types of unfair labor practices in violation of the Act and that KRMC "must be ordered to cease and desist therefrom and to take certain affirmative action that is designed to effectuate the policies of the Act." Jackson Hosp. Corp. d/b/a Ky. River Med. Ctr. & United Steelworkers of Am., AFL-CIO-CLC & Anita Turner, 340 NLRB No. 71 at 72. He then issued the detailed order that is attached as Appendix A to this opinion.

KRMC appealed the decision to a three-member panel of the NLRB, and the panel adopted the ALJ's decision with slight modifications on September 30, 2003. Id. at 1-2. On January 14, 2004, KRMC brought a petition for review of the NLRB's decision in the U.S. Court of Appeals for the D.C. Circuit. The NLRB filed a cross-petition for enforcement of the NLRB's Order. The Circuit Court granted several motions for an extension of time for KRMC to respond to the NLRB's petition, but KRMC did not file its response or seek another extension when the deadline ultimately came. Accordingly, NLRB filed a motion for default judgment on its enforcement claim. The court granted the NLRB's motion and thus dismissed the petition for review and granted the petition for enforcement on June 3, 2005.

A year and a half later, on January 27, 2007, the NLRB filed a petition to adjudge KRMC in contempt, alleging that KRMC had failed to comply with the Order in various respects. The

NLRB further moved that the controversy be referred to a special master who could resolve the various issues of fact present in this case and make a recommendation to the court, and the court granted that motion.

The discovery process in this case has proceeded largely without incident, but the parties have now reached an impasse regarding assertions of privilege.  After a series of telephonic conferences, the parties submitted briefing on the issues that divide them and KRMC tendered documents for *in camera* review.

KRMC takes issue with NLRB's assertions of privilege as they relate to (1) the deliberative process privilege; (2) the informer's privilege; and (3) the so-called "de facto" attorney-client privilege.  NLRB in turn argues that assertions of attorney-client privilege are inappropriate as applied to (1) the "Rules of Engagement" and Union brochures; and (2) documents that reflect bargaining strategy.

## II.   Analysis.

### A.   The Sufficiency of the Privilege Log.

The privilege log submitted by the NLRB in this case leaves much to be desired.  The rule requires that the party who is claiming privilege expressly make the claim and "describe the nature of the documents . . . not produced . . . and do so in a manner that, without revealing information, itself privileged or protected, will enable other parties to address the claim."  Fed. R. Civ. P. 26(b)(5).  All too many of the NLRB's entries fail to meet this requirement.

The inadequacy of a privilege log can be remedied in four ways:

1.   Permit the party another chance to submit a more detailed log;

2.      Deem the inadequate log a waiver of the privilege;

3.      *In camera* inspection of the withheld documents; or

4.      *In camera* inspection of a select sample of the withheld documents.

Of the four, deeming the log a waiver is the most draconian but the least consumptive of judicial resources while *in camera* inspection of all of the withheld documents is the most forgiving but the most consumptive of judicial resources.  Indeed, the determination by the trial judge that a document is or is not privileged may have to be reviewed by an appellate court, using additional judicial resources.  That expenditure of resources can be particularly wasteful when, as often happens, the documents will never be offered into evidence.

An additional concern, presented by this case, is that the finder of fact will see documents that are privileged and, despite the fact that judges, for example, routinely disregard inadmissible evidence,[2] it may be difficult to "unring the bell."[3]  Caution and the need to eliminate even the potential for prejudice to the holder of the privilege, require that *in camera* inspection never be any greater than absolutely necessary.

Shaping a remedy may also be a function of how inadequate the log is when viewed against other factors.  The context of the creation of the document, for example, viewed from the

---

[2] See Kenneth S. Broun et al., MCCORMICK ON EVIDENCE § 60 at 299 (6th ed. 2006) ("The most important influence encouraging trial judges to take a relaxed attitude toward evidence rules in nonjury cases is a doctrine obtaining in most appellate courts.  These appellate courts take the position that in reviewing a case tried without a jury, the receipt of inadmissible evidence over objection is ordinarily not ground for reversal if there was other, admissible evidence sufficient to support the findings.  The judge is presumed to have disregarded the inadmissible and relied on the admissible evidence.").

[3] See United States v. Lewis, 174 F.3d 881, 885 (7th Cir. 1999).

4

perspective of the history of the litigation, may permit reasonable inferences about the document that eliminate any need for *in camera* inspection.  Stated in another way, the Court does not leave its common sense at the door when it examines a privilege log and the legitimate inferences that it draws from an entry in a privilege log may rescue that entry from being condemned as inadequate in the first place-relieving the Court of any obligation to review it *in camera*-even though the privilege log as to that entry could and should have been more specific.

For example, in many cases there is a group of documents that are amenable to a categorical approach that relieves the Court of unnecessary *in camera* review.  Rule 26(b)(3) protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial" by a party or its lawyer.  Fed. R. Civ. P. 26(b)(3).  While this privilege is defeasible upon a showing of substantial need and the inability to secure their substantial equivalent without undue hardship, Rule 26(b)(3)(A)(i)-(ii), even then the Court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

Additionally, potentially privileged work product must, like any other information, be "otherwise discoverable."  Fed. R. Civ. P. 26(b)(3)(A)(i).  In most cases, information generated by lawyer and client in prosecuting or defending a case years after the events that led to the lawsuit occurred will not be relevant or likely to lead to relevant evidence, and would thus not be discoverable.  See Fed. R. Civ. P. 26(b)(1).

Finally, lawyers have a healthy respect for their own skins and know that if they demand work product from opposing counsel it will only be a matter of time before that gun is turned

around and aimed at them.

All these impediments to securing information that is presumptively protected by the work product privilege may lead sophisticated counsel to agree that a certain category of information is so clearly likely to be work product that it need not even be logged on a privilege log; its privileged nature is conceded.  Such agreements may become common now that the search for electronic data, subject to a Request to Produce, can yield amounts of potentially privileged information that is staggering; this Court, for example, has a case in which there are over 9,000 entries in the privilege log based on a production described as "hundreds of thousands of documents."

Probably for the reasons discussed above, KRMC has not challenged the NLRB's claims of work product or attorney-client privilege for documents that were not shared with the Union. Because the parties have resolved many issues between themselves prior to seeking relief from this Court, the issue before me at this time is not the adequacy of the privilege logs as a whole, but rather, the adequacy of certain entries or categories of entries.  Thus, this opinion should not be construed as finding the entries that are not presently disputed to be adequate.

In the remainder of this Opinion, I will explain the privileges claimed, evaluate whether the log is adequate considering the circumstances of the case or whether I need to see the documents themselves to make a final determination.  My decision to order that documents be produced to chambers for *in camera* review should not be construed to suggest that I find it appropriate in all cases where a privilege log is inadequate to review documents *in camera*, however.  *In camera* review, because of the burden it places on the Court, should be the exception, and not the norm.  See Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251,

265-66 (D. Md. 2008) (requiring that proponent of privilege make a factual showing, based on

the privilege log, and other extrinsic evidence if necessary, that the privilege applies before the

court should undertake *in camera* review). Weighing the various factors at play here, including

the fact that all of these documents were created after the parties initiated litigation and the fact

that there are no indications that NLRB has been dilatory or engaged in any bad behavior during

discovery, I have decided to give NLRB the benefit of the doubt and review certain of the

documents. In another case on another day, I might have required that NLRB submit more

information, or, if circumstances warranted more drastic action, I might have ordered that the

documents be produced.

### B.    Deliberative Process Privilege.

The deliberative process privilege protects "documents reflecting advisory opinions,

recommendations, and deliberations that are part of a process by which Government decisions

and policies are formulated." Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water

Users Protective Assoc., 532 U.S. 1, 2 (2001). The purpose of the privilege is to promote the

quality of agency decision making by protecting decision makers' ability to communicate freely

and privately without concern that deliberations will become the subject of discovery. Id. at 8-9.

The communications must be pre-decisional for the privilege to apply. NLRB v. Sears, Roebuck

& Co., 421 U.S. 132, 151 (1975) ("[I]t is difficult to see how the quality of a decision will be

affected by communications with respect to the decision occurring after the decision is finally

reached . . . as long as prior communications and the ingredients of the decisionmaking process

are not disclosed.").

Not all documents that relate to a given decision will be privileged simply because they

were created before the decision was made, however.  The privilege only protects documents that

are deliberative in nature, not "material that is purely factual, unless the material is so

inextricably intertwined with the deliberative sections of documents that its disclosure would

inevitably reveal the government's deliberations."  In re Sealed Case, 121 F.3d 729, 737 (D.C.

Cir. 1997).  Further, the deliberative process privilege is not automatically a basis for

withholding documents in their entirety, unless it would be impossible to redact the portions of

the documents that reveal deliberations.  Id. at 745.  Finally, documents that "memorialize or

evidence the policy an agency ultimately adopts on an issue" or documents that the agency used

in dealing with the public are not privileged.  Colo. Wild Horse & Burro Coal., Inc. v.

Kempthorne, 571 F. Supp. 2d 71, 75 (D.D.C. 2008) (quoting Eugene Burger Mgmt. Corp. v. U.S.

Dep't of Hous. & Urban Dev., 192 F.R.D. 1, 5 (D.D.C. 1999)).

    As noted above, a party seeking to withhold a document on the grounds that it is

privileged is required to "describe the nature of the documents, communications, or tangible

things not produced or disclosed – and do so in a manner that, without revealing information

itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P.

26(b)(5)(A)(ii).  Thus, for the NLRB's description to be adequate, the Court and KRMC must be

able to determine, from the privilege log, that the documents withheld are (1) pre-decisional; (2)

deliberative; (3) do not "memorialize or evidence" the agency's final policy; (4) were not shared

with the public; and (5) cannot be produced in a redacted form.

    Agencies seeking to invoke the deliberative process privilege commonly do so through a

combination of privilege logs that identify specific documents, and declarations from agency

officials explaining what the documents are and how they relate to the decisions.  See, e.g.,

<u>Landry</u>, 204 F.3d at 1134; <u>Colo. Wild Horse</u>, 571 F. Supp. 2d at 73 n.2.  NLRB here has not

produced any such declarations, and relies instead on its privilege log alone.  The privilege log

identifies the date, time, author, recipient(s), privilege(s) claimed and contains a brief description

of the documents being withheld.  <u>See</u> Exhibits 1-2 to MTC ("Privilege Logs").  The e-mail

descriptions range in specificity from descriptions such as: "Notes concerning appointment with

KRMC witnesses," "Intra-agency memorandum re initiation of contempt proceedings" or "Re

KRMC – next steps," to those that are less specific  such as: "Re request for discovery-related

info," "Re potential witness," or "Re contempt petition review."  <u>See</u> Privilege Logs, Intra-

Agency Memoranda & Communications at 1, Entry Nos. 626, 705, 726, & 588.

### 1.    Intra-Agency Memoranda and Communications.

The first section of the NLRB's privilege log is entitled NLRB's Privilege Log for Intra-

Agency Memoranda and Communications.  It contains 16 non-numbered entries.  Of those, 13

are withheld on the basis of the deliberative process privilege alone and three are also withheld as

attorney work product.  With the exception of the description of documents dated April 21, 2006

("Intra-agency facsimile re request for information"), October 11, 2005 ("Intra-agency

memorandum re KRMC compliance"), and Terry Combs's undated notes ("Notes concerning

appointment with KRMC witnesses"), I am satisfied by the descriptions of the documents

provided by the NLRB.

Eight of the 13 documents have the same description: "Intra-agency memorandum re

initiation of contempt proceedings."  The communications are generally between various

members of the General Counsel's office or Solicitor's office, the Board, and Regional Directors.

All of the communications pre-date the agency's decision to initiate contempt proceedings and

appear to be memoranda circulated among decision makers about the upcoming decision whether to initiate contempt proceedings.  Thus, I am satisfied, from my inspection of the log and my understanding of the history of the case, that these documents can be withheld from production.

Similarly, the November 27, 2006 communication described as "Intra-agency memorandum re authorization to initiate contempt proceedings" can be properly withheld.  The August 10, 2006 "Memorandum re issuance of subpoenas and referral to contempt litigation" also reflects a document circulated among decision makers regarding an upcoming decision, and I therefore find that it may be withheld.

The remaining three documents I will permit the NLRB to withhold on the basis of the work product privilege.  Two are described as research-related items[4] created by law clerks or attorneys while the third are the notes of a conversation with a witness.

First, I can find quite easily that legal research by law clerks[5] and attorneys are prepared "for trial" and reflect the "mental impressions, conclusions, opinions or legal theories of a party's attorney or representative."  It is hard to imagine a document that memorializes legal research done by a lawyer or law clerk that is not work product.

Second, notes of a attorney memorializing his or her conversation with a witness are that

---

[4] The descriptions provided are: "Intra-agency email re research assignment," "Research conducted by law clerk," and "Notes re: telephone conversation with witness."

[5] United States v. Nobles, 422 U.S. 225, 238-39 (1975) ("But the [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").  Accord United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 967 (3d Cir. 1988); Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 445 (S.D.N.Y. 1990) (extending work product protection to a paralegal's notes).

attorney's work product.[6]

I will, however, require the NLRB to tender copies of the undated notes and the entries dated April 21, 2006 and October 11, 2005 (described above) to chambers for *in camera* review. As the notes are undated, I am unable to determine whether they are pre-decisional. As noted above, the entry dated April 21, 2006 is described as an "intra-agency facsimile re request for information" and was sent from a Field Examiner to Daniel Collopy, Deputy Assistant General Counsel. Based on the description alone, I am unable to determine what the document relates to, and whether it is deliberative in nature. The October 11, 2005 document is an "intra-agency memorandum re KRMC compliance." I cannot tell from the description whether the document simply recounts facts or if it provides some insight into the deliberative process.

**2. Intra- and Extra-Agency E-Mails.**

This section of the NLRB privilege log contains several hundred e-mail strings, many of which contain more than one message. Of those, the deliberative process privilege is asserted as to approximately 320 messages, often in combination with other privileges. The vast majority of the descriptions provided in this section of the privilege log are inadequate, generally because

---

[6] Hickman v. Taylor, 329 U.S. 495, 511 (1947) ("But as to oral statements made by witnesses to Fortenbaugh, whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.").

they do not indicate whether a document is deliberative in nature.  Accordingly, I will order

NLRB to provide me with copies of Bates Nos. 119, 121, 127, 129, 198, 301, 440, 482, 485, 489,

512, 533, 537, 581-83, 587-90, 591-93, 597, 601-621, 623, 625, 628, 635, 637, 650, 652, 655-56,

658, 660, 671, 683-84, 689-93, 696-97, 700, 705, 713, 718, 720, 723-24, 726-27, 729-30, 737,

740, 742-44, 746, 748-50, 753, 763-64, 768, 775, 778, 782-3, 785 and 796-98 for *in camera*

inspection.

There are only a few entries (Nos. 493, 626, 659, 776, 781 and 793) that come closer to

being sufficiently described to permit me to rule on the basis of the privilege log itself.  But, there

are only six of them and I do not want to be accused of straining at a gnat, having swallowed a

camel.  I will therefore examine these documents *in camera* as well.

### 3.    Non-E-Mail Communications and Correspondence Between USW & NLRB.

NLRB lists 25 items on this section of the privilege log, of which nine have already been

disclosed, despite being listed on the privilege log.  Various privileges are claimed as to the

remaining 16, including deliberative process, the informer's privilege, and the attorney-client and

work product privileges.  Some documents are claimed to be irrelevant, although, if so, they

should not have been on the privilege log in the first place.

In my view, the entries are insufficient and I will order these documents produced for *in

camera* inspection.

### B.    Informer's Privilege.

NLRB seeks to withhold 33 documents under the informer's privilege.  The informer's

privilege is not the sole basis for withholding any of those documents; 29 are also withheld on

the basis of work product and deliberative process, one is withheld on the basis of deliberative

process, and three are withheld on the basis of attorney-client privilege.

KRMC correctly points out that the informer's privilege is concerned only with the identity of the informer. Roviaro v. United States, 353 U.S. 53, 60 (1957) ("The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed . . . the privilege is no longer applicable."). Thus, it is not a basis for withholding a document unless its contents would reveal the informer's identity. Further, if the informant has already been revealed as an informant, then the rationale for concealing her identity disappears.

All this is true, but nonetheless it is unimportant to these particular documents. Twenty-nine of the documents on the NLRB's privilege log for witness statements are identified as witness statements taken by various lawyers or other personnel in preparation for litigation in this case. Counsel for KRMC has not disputed the claim that these are protected by the work product privilege, nor could she. See Hickman, 329 U.S. at 510-11. The NLRB's privilege claim as to these documents is sustained.

There are two other documents claimed to be protected by the attorney-client privilege,[7] and the last item, first on the log for witness statements, is described as "facsimile from witness." I am unable to determine whether these items are privileged from the log, so I will review them *in camera*.

### C.    De Facto Attorney-Client Privilege.

---

[7] These items are two Feb. 23, 2006 documents from Pidcock to Collopy regarding potential witnesses, and a Mar. 30, 2006 document from Mori to Pidcock regarding witnesses and information about the contempt litigation.

13

NLRB seeks to withhold several documents on the grounds that they are protected by a "de facto" attorney-client privilege. Specifically, these items are communications between counsel for and representatives of the Union and counsel for and representatives of the NLRB. On the privilege log, NLRB merely notes that these items are "AC" for attorney-client privileged. KRMC finds fault in the fact that NLRB does not identify which documents it claims are covered by the "de facto" privilege. NLRB does, however, identify the senders and recipients of communications and their professional titles and affiliations, which permits the reader to determine which entries reflect communications between the members of the Union and NLRB. Thus, it is possible to determine, from the log, which entries are at issue.

The de facto attorney-client privilege applies in situations where there is no actual attorney-client relationship, but one entity is acting like the other entity's attorney. See Donovan v. Teamsters Union Local 25, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 103 F.R.D. 550, 552-53 (D. Mass. 1984). In Donovan, a man named Tom Foley filed a complaint with the Secretary of the Department of Labor ("DOL") after exhausting internal union remedies and the DOL proceeded against the Union. Id. at 552. The Union requested letters that Foley had written to Union counsel, and DOL objected on grounds that they were covered by the "de facto" attorney-client privilege. The court noted that "[t]he question of whether an attorney-client relationship exists rests on the actions of Mr. Foley," and determined that Foley had "accepted [the Secretary's legal staff] as his own lawyers." Id. Thus the court determined that an attorney-client relationship existed between Foley and the DOL.

This same principle has also found acceptance in a line of cases involving the Equal Employment Opportunity Commission ("EEOC"). E.g., Bauman v. Jacobs Suchard, Inc., 136

F.R.D. 460, 461 (N.D. Ill. 1990); Gormin v. Brown-Forman Corp., 133 F.R.D. 50, 53 (M.D. Fla. 1990); see also EEOC v. The Indus. Co., No. 01-CV-1776, 2002 WL 31654977, at *3-6 (E.D. La. Nov. 21, 2002) (collecting cases); EEOC v. Johnson & Higgins, Inc., No. 93-CV-5481, 1998 WL 778369, at *4 (S.D.N.Y. Nov. 6, 1998) (collecting cases).  In each of those cases, the courts were persuaded that a de facto attorney-client relationship existed by the fact that the "clients" had expressly asked the EEOC to seek relief on their behalf.  E.g., Bauman, 136 F.R.D. at 52-53; Gormin, 133 F.R.D. at 53.  This specific issue has not arisen in the District of Columbia, but it is well settled that "the relationship between attorney and client hinges on the client's intention to seek legal advice and his belief that he is consulting an attorney."  Jones v. United States, 828 A.2d 169, 175 (D.C. 2003).  Thus, to determine whether there is an attorney-client relationship here, I must determine whether the Union "believed [it] was seeking advice and whether [the Union's] belief about the confidentiality of the conversation was reasonable."  Id.

As there are no statements from the Union in the record, I am confined to evaluating its behavior to determine its intentions.  Unlike Foley, the Union here retained its own counsel in addition to submitting information to the NLRB.  The NLRB argues that since the Union did not conduct its own discovery but merely relied on NLRB lawyers' discovery, I should find that it considered the NLRB to be its attorneys.  I do not find this argument persuasive.  It is well established that the proponent of a privilege bears the burden of proving that it exists.  Cobell v. Norton, 377 F. Supp. 2d 4, 9 (D.D.C. 2005).  This meager piece of evidence is not enough to carry that burden of establishing that the Union intended to seek legal advice or services from the NLRB, considered its communications confidential, and that its belief was reasonable.

That I am not persuaded by the NLRB's "de facto" privilege argument does not

15

automatically end the inquiry, however, insofar as it relates to the collaboration between the

Union and the NLRB.  Documents could be protected under the attorney-client or work product

privileges and those privileges would not therefore be forfeited because the Union shared its

privileged information with the NLRB.  "Under the common interest rule, individuals may share

information without waiving the attorney-client privilege if: (1) the disclosure is made due to

actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) the

disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse

parties."  Holland v. Island Creek Corp., 885 F. Supp. 4, 6 (D.D.C. 1995).  The common interest

doctrine is also sometimes referred to as the joint defense privilege when applied to co-

defendants.  See Intex Recreation Corp. v. Team Worldwide Corp., 471 F. Supp. 2d 11, 15-16

(D.D.C. 2007).

As I recently explained in Miller v. Holzmann, 240 F.R.D. 20, 22-23 (D.D.C. 2007), the

definition of "common interest" is not entirely settled, but in any event the parties must have a

common interest in the prosecution of a common defendant.  See also Minebea Co., Ltd. v.

Papst, 228 F.R.D. 13, 16 (D.D.C. 2005) (requiring evidence that the parties have agreed to pursue

a joint litigation strategy to apply joint defense privileges).  There is no evidence in the record to

suggest that the NLRB and the Union have any sort of written agreement that governs their

relationship, but they seem to have been working together in this litigation toward the common

goal of enforcing the NLRB's Order against KRMC.  To that end, Union counsel and NLRB

counsel seem to have collaborated on things such as responding to discovery requests, drafting

motions, pleadings, and communications with opposing counsel.  If these parties are working

together in furtherance of a common interest, and the documents were otherwise protected by the

16

attorney-client privilege, that privilege would be not waived because the Union's counsel, or

Union decision makers, were privy to the communications.

The principle of common interest, precluding a waiver, does not speak, however, to the

question of whether the attorney-client privilege existed in the first place. The privilege log

generally does not provide a sufficiently detailed description of the documents at issue for me to

determine whether they are properly withheld as privileged. Accordingly, I will order that the

documents that NLRB claimed were covered by the de facto attorney-client privilege be

produced for *in camera* inspection.[8]

While I am reviewing the documents to determine whether they are privileged, I will ask

the NLRB to file a supplemental brief on the common interest issue. As I have explained the

legal authority in this Opinion, I expect the NLRB's submission to explain the facts of this case

and apply them to the law as I have described it. The brief should be accompanied by

appropriate affidavits that explain the nature of the relationship between the Union and the

NLRB in this litigation and why the NLRB did not waive the attorney-client privilege by sharing

information with the Union. That brief shall be filed within 14 days of the date this opinion is

issued. KRMC may file a supplemental brief in opposition seven days thereafter.

### D.   Rules of Engagement and Union Brochures.

---

[8] I did not narrow the subset of documents to those for which NLRB claimed de facto attorney-client privilege because I find the other log entries to be sufficient, and my silence on the subject should not be construed as approval of the log. As discussed previously, I have limited my review to the "de facto" documents because KRMC has not raised an objection to the sufficiency of the items that are withheld as "regular" work product or attorney-client privileged. It is my understanding that the parties have independently resolved a number of discovery-related issues not raised in the briefs and I do not care to discourage cooperation by interfering with their agreements.

KRMC claims that the Rules of Engagement and Union Brochures are protected by the attorney-client privilege because they are documents that were prepared under the direction of KRMC's attorney for limited distribution to managers at KRMC.  Communications from attorney to client are privileged if they are (1) confidential; and (2) based – at least in part – on information obtained from the client.  In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).  "It remains the claimant's burden, however, to present to the court sufficient facts to establish the privilege; the claimant must demonstrate with reasonable certainty that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure."  Id. (internal citation omitted).  As the purpose of the privilege is to protect the communications from client to attorney, this circuit only extends protection where doing so is necessary because revealing the attorney's communications to her client would inadvertently disclose the client's confidences.  See GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 194 (D.D.C. 2003).  Communications that would merely tend to reveal information from third parties, or reflect the attorney's generic interpretation of a statute or regulation are not protected by the privilege.  See Tax Analysts v. IRS, 117 F.3d 607, 619 (D.C. Cir. 1997); United States v. Sayan, 968 F.2d 55, 63 (D.C. Cir. 1992); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980) ("Rather than 'counseling,' intended to assist the agency in protecting its interests, the memoranda here seem to be neutral, objective analyses of agency regulations.  They resemble, in fact, question and answer guidelines which might be found in an agency manual.").  Finally, the communication must relate to the provision of legal, and not merely business, advice.  See U.S. ex rel. Fago v. M&T Mortg. Corp., 238 F.R.D. 3, 11 (D.D.C. 2006);  Minebea, 228 F.R.D. at 21.

I have reviewed both items *in camera* and I agree with KRMC as to part of the Rules of

Engagement brochure.  Without revealing the contents of the brochure that I consider to be

privileged, I can say it is a document that was prepared at the direction of an attorney for KRMC

to provide guidelines to managers for how to interact with their employees appropriately in light

of the NLRA.  The document specifically indicates that it is not for distribution to persons other

than the managers to whom it was sent.  The Rules of Engagement brochure contains 12

numbered pages.  Pages one through five refer to the hospital's concerns about specific events

that are taking place at the hospital and present legal advice on how to appropriately address

those concerns.  Those pages are obviously based on information that the hospital shared with its

legal department for the purpose of obtaining advice.  Accordingly, I find that those pages should

be redacted.  However, the remaining pages, numbered six through 12, are not based on client

information.  Rather, they are acronyms used to remind the reader of the pertinent legal rules and

frequently-asked-questions-style lists that one might expect to find hanging in an office break

room, warning employees of their rights under a statute or regulation or distributed at a training

seminar.  They, like the items discussed in Coastal States, are merely neutral objective analyses

of the NLRA, and I cannot fathom what confidential information about KRMC would be

revealed by turning over that portion of the document.  Coastal States, 617 F.2d at 863.

Accordingly, I order that the Rules of Engagement Brochure be produced with pages one through

five redacted.

Even if prepared under the direction of counsel, the Union Brochure does not contain any

legal analysis or advice.  Instead, it analyzes factual claims that two unions were using to

promote their membership.  The memo purports to debunk those claims.  It does not deal at all

with KRMC, but solely focuses on the results the unions have encountered at other hospitals.

Because this memo does not even contain legal advice, and is based on information obtained from third parties and not from KRMC, I will order that it be produced.

### E.    Bargaining Strategy.

KRMC seeks to withhold several documents on the ground that they would reveal the Hospital's bargaining strategy with the Union.  In support, KRMC cites to several administrative opinions issued by the NLRB that recognize such a privilege.  However, there is no authority adopting any privilege for bargaining strategy in federal courts.  See Winnett v. Caterpillar, Inc., No. 06-CV-235, 2008 WL 399301, at *3 (M.D. Tenn. Feb. 6, 2008) (entertaining Union's request for a protective order to protect confidential strategic information, but recognizing that "there is no federal case law or statute requiring that negotiating strategies are privileged from disclosure.") (internal citation omitted); NLRB v. Serv. Employees Int'l Union, Local 521, No. 07-MISC-80170, 2008 WL 152176, at *3 (N.D. Cal. Jan. 16, 2008) (distinguishing case from administrative cases where union is protected from disclosing bargaining strategy to the employer because issue at bar was disclosure to the Board, and confidentiality could be addressed through protective order); Patterson v. Heartland Indus. Partners, LLP, 225 F.R.D. 204, 206-07 (N.D. Ohio 2004) (rejecting claim of privilege based on the NLRA and the First Amendment for bargaining strategy, and upholding denial of protective order as to those communications).

At best, there is authority for issuing a protective order to ensure that communications that would reveal bargaining strategy are kept secret, particularly in light of the fact that the Union and KRMC continue to interact with one another.  See Winnett, 2008 WL 399301, at *4. Here, as in Local 521, the documents will be produced to the NLRB, not to the United Steelworkers.  Local 521, 2008 WL 152176, at *3.  The NLRB is not in continuing negotiations

with KRMC so that KRMC will not be unfairly prejudiced by having to reveal its strategies to an adverse party in the negotiations.

At this point, there is no protective order in place to address the handling of documents that contain confidential information.  The parties are directed to file a joint proposed protective order within 10 days of the date of this Opinion to govern the use of the documents that KRMC has identified as being protected on grounds that they would reveal bargaining strategy.  Once that Order has been approved, I will direct KRMC to produce those documents subject to the protective order.

### III.   Conclusion.

For the reasons stated herein, NLRB will be required to produce the items I have identified for an *in camera* review within 10 days.  NLRB shall do so by tendering a CD or DVD marked confidential to chambers that contains the files I have identified in a universally readable format such as .pdf.  KRMC shall produce the Union Brochure and the Rules of Engagement brochure in accordance with the restrictions set forth herein.

NLRB shall file its supplemental brief and affidavit(s) on the common interest question within 14 days.  KRMC shall have seven days to oppose.

Both parties shall work together to draft a protective order that will ensure that documents that tend to reveal KRMC's bargaining strategy are kept confidential.  That proposed order shall be filed with the Court within 10 days.

Finally, as the resolution of these issues marks the end of the discovery process in this case, the parties shall confer and present the Court with a proposed schedule for going forward. The schedule shall be submitted within 10 days.

An Order accompanies this Memorandum Opinion.


Dated:  May 15, 2009                                    _____/S/_____
                                                       JOHN M. FACCIOLA
                                                       U.S. MAGISTRATE JUDGE