# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) |
| JACKSON HOSPITAL CORP., d/b/a KENTUCKY RIVER MEDICAL CENTER, | ) ) ) ) |
| Respondent. | ) ) ) |

Misc. Action No. 07-549 (JMF)
REDACTED

## MEMORANDUM OPINION

I have been appointed to act as special master in this case. Currently pending before me and ripe for resolution is petitioner's Motion for Leave to Amend and Supplement Petition for Adjudication in Civil Contempts and for Other Civil Relief [#62] ("Mot. to Amend")[1] and the parties' cross-motions for summary adjudication.[2]

## I.     BACKGROUND

### A.     Procedural Background

The facts of the case have been detailed in my previous opinion. See N.L.R.B. v. Jackson

---

[1] Petitioners filed a redacted version of the motion at Docket #59. All references will be to the sealed version. Portions in double-brackets ([[ ]]) will be redacted in the public filing.

[2] Respondent's Motion for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h) ("KRMC SJM") [#52] and Motion of the National Labor Relations Board for Summary Adjudication in Civil Contempt (Including Memorandum of Points and Authorities in Support Thereof ("NLRB SJM") [#65]. Petitioners also filed a redacted version of the motion for summary adjudication at Docket #60. All references will be to the sealed version. Portions in double-brackets ([[ ]]) will be redacted in the public filing.

Hosp. Corp., 257 F.R.D. 302, 306 (D.D.C. 2009). Briefly, the United Steelworkers of America, AFL-CIO-CLC ("the Union") filed charges with the National Labor Relations Board ("NLRB" or "petitioner") under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA" or "the Act")[3] against Jackson Hospital Corporation, doing business as Kentucky River Medical Center ("KRMC" or "respondent"). Id. Union's allegations included that "KRMC was engaging in unfair labor practices, including refusing to meet and bargain with the Union; threatening, punishing, and discharging employees who participated in Union activities; taking action without consulting with the Union; videotaping Union activities; and posting anti-Union signs." Id. The NLRB General Counsel issued complaints based on the Union's charges, which were then tried before Administrative Law Judge David Evans. Id.

In his decision of February 20, 2002, Judge Evans concluded that KRMC had engaged in unfair labor practices in violation of the Act, and that it "must be ordered to cease and desist therefrom and to take certain affirmative action that is designed to effectuate the policies of the Act." Id. (citing Jackson Hosp. Corp. d/b/a Ky. River Med. Ctr. & United Steelworkers of Am., AFL-CIO-CLC & Anita Turner, 340 NLRB No. 71 at 72). The decision was appealed to the NLRB, which upheld Judge Evans' decision, with only slight modifications. Id. KRMC petitioned the United States Court of Appeals for the District of Columbia Circuit for review of the NLRB's decision, prompting the NLRB to file a cross-petition for enforcement of its order. Id. KRMC failed to file a timely response to NLRB's petition, and the court of appeals subsequently dismissed KRMC's petition for review and granted NLRB's petition for

---

[3] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

enforcement on June 3, 2005. Id.

On January 27, 2007, the NLRB filed a petition with the court of appeals to hold KRMC

in civil contempt for failure to comply with the court's order, and moved to have the case

referred to a special master. Id. In an order filed on November 9, 2007, the court of appeals

granted that motion, and appointed me as special master. See USCA Order of November 9, 2007

("USCA Order") [#1].

### B.     The Charges in the Initial Petition

In the petition for adjudication in civil contempt filed with the court of appeals, the

NLRB charged that KRMC had disobeyed the court of appeals' 2005 order by:

1.  Failing to comply with paragraph 2(a) of the court's judgment by failing to offer
    reinstatement to Clara Gabbard and Sandra (Baker) Hutton;

2.  Failing to bargain collectively and in good faith, in violation of paragraphs 1(e),
    1(g), and 2(e) of the judgment, by engaging in tactics designed to minimize the
    time available for bargaining with USW, by:

    (A)   arriving late for bargaining sessions on July 12, 2005, April 12, 2006,
          August 9, 2006, August 10, 2006, and September 19, 2006;

    (B)   walking out on bargaining sessions before they were completed on July 12,
          2005, October 6, 2005, and April 12, 2006;

    (C)   Cancelling unilaterally or failing to appear for bargaining sessions
          scheduled for July 13, 2005, October 7, 2005, and September 19, 2006;

    (D)   Answering and making phone calls during bargaining sessions, or leaving
          sessions for lengthy caucuses, on October 6, 2005, June 8, 2006, June 9,
          2006, August 9, 2006, and August 10, 2006;

3.  Unilaterally changing the terms and conditions of employment of the employees
    in the unit represented by the Union without bargaining by:

    (A)   Implementing a wage increase and new wage policy on July 28, 2005;

(B)     Changing the work duties of its dietary and certified nursing assistant (CNA) employees represented by the Union in May 2006, without notice to the Union;

(C)     Implementing a new sick leave policy for its housekeeping employees represented by the Union, without prior notice to the Union;

(D)     Implementing a new call-off/on-call procedure for its nurses represented by the Union in May or June 2006, without prior notice to the Union;

4.     Failing to bargain collectively and in good faith, in violation of paragraphs 1(e), 1(g), and 2(e) of the judgment, by informing the Union on August 9 and August 10, 2006, that respondent would not provide documents requested by the Union on July 27, 2006 that pertained to respondent's discipline of an employee represented by the Union.

See Petition of the National Labor Relations Board for Adjudication in Civil Contempt and for Other Relief ("Petition") at 3-5, National Labor Relations Board v. Jackson Hospital Corporation, d/b/a Kentucky River Medical Center, No. 04-1019 (D.C. Cir. Jan. 27, 2007), Document No. 1019738.

## II.     PETITIONER'S MOTION TO AMEND AND SUPPLEMENT THE PETITION

### A.     Allegations Based on Events Since the Filing of the Initial Petition

Petitioner now seeks leave of the court to supplement its petition by adding the following allegations:

1.     KRMC indefinitely suspended the sole remaining Union bargaining team member, Debbie Miller, in January 2009;

2.     KRMC has engaged in bad faith bargaining by establishing [[

]] and by having its chief negotiator deliberately [[
]];

(A)     On or about April 2007, KRMC unilaterally implemented a wage increase for its employees represented by the Union; and

(B)     On or about April 2008, respondent unilaterally implemented a wage increase for its employees represented by the Union; and

4

> (C)     On or about April 2009, respondent unilaterally implemented a wage increase for its employees represented by the Union.
>
> 3.     On or about February 27, 2009, the Union sent respondent attorney Carmody a written request for relevant information, seeking a complete listing of all bargaining unit employees, along with their addresses, telephone numbers, departments, job titles, and current hourly rates.
>
> 4.     Respondent failed to produce the requested information for more than two months without explanation for the delay and only after the Union filed an unfair labor practice charge.
>
> 5.     Since on or about January 16, 2009, respondent has failed to and refused to comply with paragraph 1(c) of the Court's judgment by indefinitely suspending the sole remaining Union bargaining team member, Debbie Miller, because of her Union activities.
>
> 6.     Respondent has failed and refused to comply with paragraph 2(e) by engaging in bad faith bargaining by establishing [[                  ]] and by having its chief negotiator [[                            ]].

<u>See</u> Mot. to Amend at 4-5.

**B.     The Nature of the New Allegations**

The petition filed in the court of appeals dealt by necessity with events that had occurred from the inception of the controversy to January 27, 2007, the date of its filing. With one exception–the allegation premised on the establishment of [[                            ]]–NLRB has now moved to amend its complaint to add allegations of contempt based on events that have occurred since the date of the filing. The Order of the court of appeals authorizes me to consider "motions to amend or supplement the pleadings and all other matters as authorized by the Federal Rules of Civil Procedure." USCA Order at 2.

**C.     Legal Standard**

5

While the NLRB has moved to amend under both Rules 15(a) and 15(d) of the Federal Rules of Civil Procedure (Mot. to Amend at 1), the more appropriate rule for adding occurrences since the filing of the initial petition is Rule 15(d), which permits a party to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

The difference between Rules 15(a) and 15(d) is fundamental. A motion to amend under Rule 15(a) relates to matters that occurred before the original petition was filed; a motion to amend under Rule 15(d) "seeks to set forth transactions, occurrences or events that took place after the original complaint was filed." 1 Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary 286 (2010). See Prasco, LLC v. Medicis Pharm. Corp, 537 F.3d 1329, 1337 n.5 (Fed. Cir. 2008); Connectu LLC v. Zuckerberg, 522 F.3d 82, 90 (1st Cir. 2008).

While certain amendments under Rule 15(a) are of right, filing a supplemental pleading under Rule 15(d) always requires leave of court upon motion. Fed. R. Civ. P. 15(d). The standard guiding the exercise of the court's discretion as to motions made under either Rules 15(a) or 15(d) is, however, similar. Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008). Leave to amend or supplement a complaint is freely given unless the party opposing it shows "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Forman v. Davis, 371 U.S. 178, 182 (1962). Unless the opponent of the motion makes such a showing, leave to amend should be freely given. Id.

Of these factors, there can be no justified claim of repeated failures to cure deficiencies.

Thus, the only pertinent factors are bad faith, undue delay, resulting prejudice, and the futility of amendment.

> 1.  *Post-2007 Claims: Bad Faith, Undue Delay, and Resulting Prejudice*

In assessing delay when supplementation is sought, the appropriate period to consider is obviously the time from the occurrence of the event to the motion to supplement.

First, the suspension of Debbie Miller occurred in 2009, as did the asserted failure to provide information. Second, the wages increases occurred in 2007, 2008, and 2009. Third, the failure to produce information sought to be added occurred in 2009.

As to the events that occurred in 2009, the motion to supplement was filed on October 30, 2009, in the same year when the events occurred, and after discovery had ended and it had become clear to the NLRB that KRMC was not going to consent. I certainly cannot equate that to the utterly unjustified delay I encountered in Becker v. District of Columbia, 258 F.R.D. 182 (D.D.C. 2009), where the defendants asserted an affirmative defense for the first time five years after discovery had closed.

I appreciate that KRMC claims bad faith and a dilatory motive because the NLRB is seeking to avoid having to prosecute any of these matters as unfair labor practices using the available administrative process. KRMC accuses NLRB, knowing that the D.C. Circuit held that its only two remaining members cannot resolve matters before it legitimately, of attempting to use this proceeding to do indirectly what it cannot do directly. Memorandum in Opposition to Motion for Leave to Amend and Supplement Petition for Adjudication in Civil Contempt and for Other Civil Relief [#71] at 14 (citing Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F.3d 469, 472-73 (D.C. Cir. 2009)). Be that as it may, I have an independent responsibility to the

court of appeals to resolve all of the issues pertaining to KRMC's alleged contempt. If, as I have concluded, the NLRB's motion to supplement is otherwise legitimate, I cannot let the potential inability of the NLRB to adjudicate unfair labor practices in its present composition to deter me from finishing what I have to do.

Moreover, I find no prejudice to KRMC from having to defend against these allegations. First, the only facts pertaining to Miller's suspension are known: she was suspended for smoking while having with her a phlebotomy tray. Second, the KRMC person most familiar with the facts, Karla Miller, was deposed and testified to those facts. I see no need for any additional discovery and, as will be explained later, I am convinced that whether Miller was suspended in retaliation for union activity raises a genuine issue of material fact; I cannot divine who would have any more information than the two women, both named Miller, whose potential testimony is known. I therefore see no prejudice whatsoever in KRMC's having to defend the suspension on the present record.

As to the 2008 and 2009 wage increases, the parties advise me that there have been no collective bargaining sessions since 2006,[4] and all that can be known about this event–KRMC implemented a wage increase without bargaining about it–is known. Again, there is no prejudice from having KRMC defend its action on the present record.

Finally, there are the allegations pertaining to the delay in 2009 that the Union claimed it encountered when it demanded information of KRMC on February 27, 2009, but did not receive the requested information until May 5, 2009. NLRB SJM at 28-29. Again, the allegation is based on letters and the testimony of witnesses who have been deposed and spoken to these allegations.

---

[4] See Mot. to Amend at 2.

8

Id. at 29. I see no prejudice whatsoever to KRMC from having to defend these allegations on the existing record. Thus, I will grant NLRB's motion to supplement insofar as its amendment sets forth events that occurred after January 27, 2007, the date of the filing of its petition.

        2.     *Pre-2007 Claims: Bad Faith, Undue Delay, and Resulting Prejudice*

The only allegation that deals with events that occurred before January 27, 2007 is the NLRB's claim that documents obtained through discovery reveal that KRMC established [[

]], and had its chief negotiator work deliberately [[                                    ]]. See Mot. to Amend at 2.

KRMC provides me with no reason to disbelieve the representation of the NLRB's counsel that the NLRB was unaware of [[          ]] prior to seeing the documents in discovery. Furthermore, the documents were created by KRMC personnel, and it can defend itself from their significance by interviewing those personnel and preparing them to testify without any further need for discovery. In addition, the NLRB moved to amend quickly after discovery ended, and I find no evidence of any bad faith or dilatory motive. The NLRB motion to amend its petition with this allegation will be granted.

        3.     *Futility of Amendment*

Finally, the parties have already moved for summary judgment, and have marshaled most effectively the record evidence that has been accumulated during discovery and otherwise. On the basis of those summaries, I can effectively decide whether supplementing the pleading would be futile, *i.e.*, where KRMC, as the party resisting supplementation, is nevertheless entitled to summary judgment on the amended or supplemented claim. It is not prejudiced by the

9

amendment or supplementation if it is nevertheless entitled to summary judgment; there would

be no reason to quarrel with success.

## III.    THE SUMMARY JUDGMENT MOTIONS

I will now turn to whether either party is entitled to summary judgment on the remaining

claims.  Before I begin the journey, I advise the parties that I am not permitting another round of

summary judgment briefing.  I intend to set a firm trial date, and it will not be postponed because

of any more summary judgment briefing.

### A.    Bargaining to Impasse

It is settled that if collective bargaining has reached an impasse, management may

unilaterally implement a change in the conditions of employment, if that change was one of the

proposals management made during the bargaining. Amer. Fed. of Television and Radio Artists

v. NLRB, 395 F.2d 622, 624 (D.C. Cir. 1968).  Management may not, however, avail itself of

that prerogative if it did not engage in good faith bargaining before impasse was reached. Id.

Obviously, if management stonewalls during the negotiations, and then unilaterally implements

the wage increase (or other term or condition of employment), it has failed in its fundamental

legal obligation to engage in good faith bargaining about the increase.

Both the NLRB and respondent insist that they are entitled to summary judgment

concerning the entire course of the collective bargaining between them, and the imposition of the

annual wage increases thereafter, but they both ignore that the question of whether or how

impasse had been reached is a question of material fact.  Determining whether the parties

bargained in good faith before impasse requires a careful, nuanced evaluation of all of the facts

leading up to the moment when one party claims that impasse was reached after good faith

bargaining.

Here, all I know is that "[o]n February 9, 2005, and numerous other occasions, the parties bargained over the wage increases" and "exchanged correspondence expressing their views, understandings and positions." <u>Memorandum of Points and Authorities in Support of Respondent's Motion for Partial Summary Judgment Pursuant to Local Civil Rule 7(h)</u> ("KRMC SJM Memo") [#52] at 18 (citing <u>Respondent's Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment Pursuant to Local Rule1 7(h)(1)</u> ("KRMC Facts") [#52] at ¶¶ 98-102). KRMC asserts that the Union consented to an increase, but demanded that the increase be part of a collective bargaining agreement of three years. KRMC Facts at ¶¶ 99-100, 103-08, 110. KRMC's representative rejected the contract duration term as unrealistic, declared an impasse, and implemented the wage increase. <u>Id.</u> at ¶¶ 114, 116.

For its part, NLRB insists that KRMC never intended to bargain collectively. NLRB SJM at 47. To the NLRB, the facts pertaining to the entire course of bargaining show that KRMC never had any intention of reaching an agreement with the Union, but [[

]]; it never truly engaged in collective bargaining in good faith. <u>Id.</u>

Clearly, the question of what happened during the course of collective bargaining is a disputed and material fact, as is the intent with which KRMC acted during the negotiations; did it always [[                                    ]]?

A judge clearly errs when on summary judgment she resolves questions of fact; once one emerges, the court's power is exhausted and summary resolution is impossible. <u>Anderson v. Liberty Lobby, Inc</u>, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."). The parties' cross-motions for summary judgment as to the bargaining sessions and the unilateral wage increases are denied.

I appreciate that there are other arrows in KRMC's quiver, at least as to the wage increases. It insists that the implementation of the 2005 wage increase was justified by an economic exigency, or was simply an annual event that happened to occur during negotiations. KRMC SJM Memo at 20-29. But, if KRMC prevails on its contention that it bargained in good faith before it implemented the 2005 wage increase, it is unnecessary to reach either issue.

Moreover, KRMC also ignores that resolution of both legal issues turns on the resolution of factual issues, such as whether the economic exigency it claims motivated its wage increase in fact existed. It is also true that KRMC never justified the increase at the time on the grounds that it was a discrete annual event. Certainly, there is a question of fact as to why it implemented the wage increase when it did. I cannot resolve that question without a thorough consideration of all the facts bearing on the bargaining and the claimed financial condition offered as justification for the exigency KRMC now invokes.

**B.  Reinstatement of Hutton and Gabbard**

A series of events in this case led to the unfortunate failure of both parties to make either Administrative Law Judge Evans or the court of appeals aware of an order in a parallel case, even though that order would have unquestionably led to the modification of the orders that Judge Evans and the court of appeals entered.

The complicated history begins in 2001, when the evidentiary hearing before ALJ Evans ended with his closing the record on August 2, 2001. One of the issues before the ALJ was whether KRMC should be required to offer reinstatement to two women named Sandra Baker

12

(now Hutton) and Clara Gabbard, whom the NLRB claimed had been fired because of their union activity.

On January 26, 2001 the Regional Director of Region 9 of the NLRB commenced an independent proceeding in the United States District Court for the Eastern District of Kentucky. KRMC Facts at ¶ 1. In this proceeding, the NLRB sought the reinstatement of the same two women for the same reasons advanced in the proceeding before ALJ Evans.

That court, per Judge Hood, issued an order on January 18, 2002, that, *inter alia*, ordered the reinstatement of Hutton and Gabbard. Ahearn, *et al.* v. Jackson Hospital, *et al.*, 5:02-cv-00009 (E.D. Ky. Jan. 18, 2002). KRMC claims that it is undisputed that it made written offers of reinstatement to both women in accordance with Judge Hood's order, and that both women returned to work shortly after Judge Hood issued his order, *i.e.*, in January and February, 2002. KRMC SJM Memo at 17.

Although the NLRB sought the identical relief in the proceeding before ALJ Evans, no one told ALJ Evans that he need not concern himself with the reinstatement of Hutton and Gabbard in light of Judge Hood's order. Thus, he, too, ordered the reinstatement of Hutton and Gabbard on February 20, 2002, unaware (according to KRMC) that they had been offered reinstatement and accepted it. KRMC SJM Memo at 11.

The plot then thickened. KRMC appealed from Judge Hood's order to the Sixth Circuit. While the appeal was pending, KRMC went back to Judge Hood, complaining that Gabbard had failed to show up for return-to-work examinations, and had threatened to "get even" with those who had mistreated her at KRMC. KRMC SJM Memo at 12. Judge Hood credited these complaints, and modified his order to find Gabbard unfit for reinstatement. Ahearn, 5:02-cv-

00009 (E.D. Ky. May 28, 2002). KMRC was therefore no longer obliged to offer Gabbard reinstatement.

Ultimately, the Sixth Circuit affirmed Judge Hood's rulings in the rest of the case between the NLRB and KRMC, including his conclusion that Gabbard and Hutton had been illegally terminated for union activity. Ahearn v. Jackson Hosp. Corp, 351 F.3d 226 (6th Cir. 2003).

In the meanwhile, KRMC had sought review of ALJ Evans's decision by filing a petition with NLRB on April 18, 2002. KRMC Facts at ¶23. NLRB was a party to the case before Judge Hood and knew as well as KRMC that Judge Hood had relieved KRMC of any obligation to reinstate Gabbard. Yet, and although it is hard to believe, the NLRB affirmed Judge Evans' decision and ordered KRMC to reinstate Gabbard, Hutton, and other employees, despite Judge Hood's order as to Gabbard that was to the precise contrary. In re Jackson Hosp. Corp. d/b/a Kentucky River Med. Ctr. and United Steelworkers of America, AFL-CIO-CLC and Anita Turner, 340 N.L.R.B. 536, 537 (N.L.R.B. 2003).

It gets worse. When the NLRB sought enforcement of the NLRB's affirmation of Judge Evans' order, it did not tell the court of appeals about Judge Hood's order relieving KRMC of any obligation to reinstate Gabbard, from which the NLRB had not appealed. Thus, the court of appeals enforced the order of the NLRB that KRMC reinstate Gabbard, even though Judge Hood had relieved KRMC of that very obligation.

It is hard to determine who is more to blame for all this. KRMC should have told ALJ Evans of Judge Hood's order so that neither he nor the NLRB would have wasted any time on the question of Gabbard's reinstatement. The NLRB should never have ordered the reinstatement of

14

Gabbard, let alone sought enforcement of that order, when a federal judge had relieved KRMC of that obligation.

KRMC devotes a portion of its motion to justifying why it did not tell anyone about Judge Hood's order. See KRMC SJM Memo at 17-18. There is not a judge or court of appeals that would be offended by being told that a decision by another court has resolved a matter, eliminating the need for that judge or that court to resolve an issue otherwise before it. Moreover, Judge Hood's modification of his order pertaining to Gabbard, from which no appeal was taken, rendered the issue of her reinstatement moot. Federal courts lack jurisdiction over issues that are moot,[5] and the same should be true of administrative agencies who are conducting themselves in accordance with fundamental principles of law. The notion that parties lack a mechanism to advise a judge or court that developments have rendered an issue moot, when courts are obliged to notice their own lack of jurisdiction *sua sponte*,[6] is absurd.

This is water over the dam; the first question presented is the impact of Judge's Hood's order on the summary adjudication in this case.

The answer is easy; Judge Hood's order is a final judgment, and bars the parties to the case from any effort to relitigate in another forum what was litigated before him. Natural Res. Def. Council v. Envtl. Prot. Agency, 513 F.3d 257, 260 (D.C. Cir. 2008); Restatement (Second) of Judgments §§ 17(2)-(3) (1982). Hence, the NLRB is barred from relitigating any question pertaining to the reinstatement of Gabbard whatsoever; the bar of a final judgment pertains to any allegation that was or could have been made in the matter that led to the entry of that final

---

[5] District of Columbia v. Doe, 611 F.3d 888, 894 (D.C. Cir. 2010).

[6] Fed. R. Civ. P. 12(h)(3).

judgment. San Remo Hotel, L.P. v. San Francisco, 545 U.S. 323, 336 n.16 (2005) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Thus, the NLRB is barred from litigating again any claim as to her reinstatement, and KRMC is entitled to summary judgment on that claim.

The situation is different as to Hutton, but the result is the same. KRMC has tendered uncontested facts that it offered Hutton reinstatement shortly after Judge Hood ruled, and she accepted it. KRMC Facts at ¶¶ 7-9. NLRB does not tender any evidence upon which a reasonable person could predicate a contrary conclusion, and KRMC is therefore entitled to summary judgment. It nearly goes without saying that, contrary to NLRB's assertion, KRMC was not perpetually obliged to keep renewing an offer of reinstatement to Hutton every year since the 2005 order. The order speaks only of reinstatement, and the uncontested facts establish that KRMC fulfilled the only obligation it had.

**C.     Failure to Provide Information**

As explained above, in its petition to the court of appeals in this case, the NLRB charged that, in 2006, KRMC failed to provide information it sought in a timely manner. Petition at 3. KRMC seeks summary adjudication that the 2006 events cannot be the premise of a contempt citation; the NLRB does not seek summary adjudication in its favor based on the 2006 events.

As also explained above, NLRB seeks to amend its petition to claim another failure to provide information in 2009. Mot. to Amend at 4-5. The NLRB seeks summary adjudication of that claim but, at this point, KRMC, perhaps waiting for my resolution of the motion to amend, has not spoken to the events in 2009.

Furthermore, in 2009, the Union filed an unfair labor practice charge based on KRMC's alleged failure to provide the demanded information. NLRB SJM at 29.

16

### *1. The 2006 Events*

KRMC moves for summary adjudication of the 2006 events related to requests for information by NLRB, stating that it did not engage in improper or dilatory tactics. KRMC SJM at 36.

The allegation in the original petition is that KRMC committed an unfair labor practice by advising the Union on August 9, and August 10, 2006 that it would not provide any information requested by the Union in July 27, 2006. Petition at 5.

On July 27, 2006, Randy Pidcock, District Organizing Coordinator, District 8, of the Union wrote a letter to KRMC's counsel, Don T. Carmody demanding "all documentation relative to the Hospital's suspension of Kristen Richardson." KRMC SJM, Tab K(2) [#52-14], Carmody Dep. at Exh. 8.

There is no written evidence attesting to what occurred on August 9 and August 10, 2006, but Pidcock testified that his notes of an August 9, 2006 negotiating session indicate that he was "hoping to ask about the suspension of Kristen Richerson" at the next bargaining session. KRMC SJM, Tab L [#52-15], Pidcock Dep. at 222:16-18. The next bargaining session was held the next day, August 10, 2006, and, according to Pidcock's notes, the suspension of Kristen Richerson was on the agenda, along with other topics. Id. at 225:21-24-223:2.

On August 8, 2006, O. David Bevins, Chief Executive Officer, KRMC, wrote a letter to Kristen Richerson, confirming that she had been suspended, effective July 11, 2006, pending an investigation of an event that had occurred on July 8, 2006. KRMC SJM, Tab(K)(2), Carmody Dep. at Exh. 8.

On August 14, 2006, Pidcock wrote to Carmody, stating that "this will confirm that you

17

had planned to send to me, by overnight delivery, additional requested documentation relative to the suspension of Kristen Richerson." Id.

There is no evidence whatsoever that KRMC advised the Union that it was refusing to provide any information on August 9 and 10, 2006. KRMC is therefore entitled to summary adjudication dismissing this charge.

### 2. The 2009 Events

NLRB moves for summary judgment with regard to KRMC's alleged failure to timely provide presumptively relevant information requested by the Union on February 27, 2009. NLRB SJM at 54-55. I am allowing NLRB to amend its petition with this claim under Rule 15(d) of the Federal Rules of Civil Procedure, as noted above, because there is a developed record, and KRMC will not be prejudiced by the amendment. KRMC has not spoken to this allegation, because it did not know how I would rule on whether NLRB could prosecute this charge. In my discretion, I will deny NLRB's motion. It would be unfair to resolve that motion without KRMC's being heard when it could not know how I would rule. However, I am also reluctant to allow any more briefing on summary adjudication questions. The charge is discrete and based on a single demand for information. Therefore, it surely will not take much time for the parties to address it at trial and for me to resolve it then.

### D. Miller Suspension

In 2003, the Board found that Debbie Miller had been discharged unlawfully in 2000 for participating in the Union strike at KRMC. See In re Jackson Hosp. Corp., 340 N.L.R.B. at 584. She was reinstated in August 2004. NLRB SJM at 36.

In 2006, she became a member of the Union negotiating team with Shirley White, Louise

18

Gross, and Lynn Combs, who are nurses. Id. at 37.

On July 29, 2008, an administrative law judge concluded that KRMC had terminated Gross and suspended Combs for their union activities, including being members of the Union negotiating team. In re Jackson Hosp. Corp. d/b/a Kentucky River Med. Ctr. and United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Svc. Workers Int'l Union, AFL-CIO-CLC, Case Nos. 9-CA-42249, 9-CA-43128, 9-CA-43165, 9-CA-43397, 2008 NLRB LEXIS 232, at *110-11, *148-49 (N.L.R.B. July 29, 2008).

On January 16, 2009, KRMC notified Miller that she was being placed on indefinite, unpaid investigatory suspension. NLRB SJM at 38.

On February 18, 2009, the United States Court of Appeals for the Sixth Circuit enforced the NLRB's order awarding back pay to Miller as a result of her unlawful termination in 2000. NLRB v. Jackson Hosp. Corp., 557 F.3d 301, 304 (6th Cir. 2009).

While KRMC has not sought summary adjudication and responded to the NLRB's contention, the NLRB insists that the indefinite suspension (apparently still in force) was clearly in retaliation for Miller's union activity, entitling the Board to summary judgment. It appears, however, from the NLRB's summary of the evidence in its motion, that KRMC suspended Miller because she went to smoke a cigarette in a "smoke shack" (where employees go to smoke) with a phlebotomy tray holding tubes for blood, syringes, alcohol, gauze or cotton balls, band-aids, tape, a patient order and a biohazard container into which the used needles were to be put. NLRB SJM at 37. According to the NLRB, KRMC justified its suspension of Miller because of the risk of contamination of the contents of the tray if it had fallen off Miller's lap in the smoke shack. Id. at 39.

The NLRB insists, however, that Miller is being punished differently from the woman who was with her (Theresa Brister), and that the unique nature of Miller's indefinite suspension justifies the conclusion that the reasons for suspending Miller were a pretext for punishing her for her union activities. Id. at 40.

Even without an opposition by KRMC, I am certain that the existence of genuine issues of material fact preclude the summary adjudication the NLRB seeks.

The court of appeals has explained the proper approach to resolving claims of retaliation based on union activity as follows:

> Under *Wright Line*,[7] the General Counsel must make a prima facie showing sufficient to support the inference that the employee is engaged in protected conduct and the employer was so aware, and that the protected activity was a motivating factor in the employer's decision to take adverse action; the employer may rebut the inference by showing by a preponderance of evidence that the same action would have taken place even in the absence of the protected conduct. Laro Maint. Corp. v. NLRB, 56 F.3d 224, 228 (D.C.Cir.1995); see NLRB v. Transp. Mgmt. Corp. 462 U.S. 393, 401-03 (1983).

Citizens Inv. Svcs. Corp. v. NLRB, 430 F.3d 1195, 1198 (D.C. Cir. 2005).

While there seems to be a prima facie showing that Miller had engaged in protected activity, that the employer was unquestionably aware of it, and that it may have been a motivating factor in the decision to suspend Miller, the employer is entitled to try to rebut that inference by showing that Miller would have been suspended even if she had not engaged in protected activity. I cannot possibly say that this record in itself compels the conclusion that no reasonable person could possibly find that the employer's justification was reasonable and would

---

[7] *I.e.*, Wright Line v. Lamoureux, 251 N.L.R.B. 1083 (1980); enforced, 662 F.2d 899 (1st Cir. 1981).

have to conclude that the justification was pretextual.

Moreover, Citizens involved the review of an NLRB decision. In the particularly

analogous context of Title VII litigation, where an employee may claim that action was taken

against her for a discriminatory reason or in retaliation for her complaining about discrimination,

the court of appeals has abandoned the analysis premised on the employee first making a prima

facie case. Instead, the inquiry has been defined as follows:

> Lest there be any lingering uncertainty, we state the rule clearly: In
> a Title VII disparate-treatment suit where an employee has suffered
> an adverse employment action and an employer has asserted a
> legitimate, non-discriminatory reason for the decision, the district
> court need not–*and should not*–decide whether the plaintiff
> actually made out a prima facie case under *McDonnell Douglas*.
> Rather, in considering an employer's motion for summary
> judgment or judgment as a matter of law in those circumstances,
> the district court must resolve one central question: Has the
> employee produced sufficient evidence for a reasonable jury to find
> that the employer's asserted non-discriminatory reason was not the
> actual reason and that the employer intentionally discriminated
> against the employee on the basis of race, color, religion, sex, or
> national origin?

Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in
original).

I cannot possibly find, particularly when the Board has the burden of establishing

contempt by clear and convincing evidence, that I can resolve the intensely fact-bound issue of

whether KRMC's justification was pretextual without hearing from the KRMC officials who

made the decision. I would no more decide that case now than I would take a case from a jury

merely because the employer offered a justification and the employee presented evidence that it

was a pretext. Resolution of that issue will have to wait the presentation of the evidence and the

cross-examination of the witnesses.

## E.    Food Trays and Call Offs

KRMC also seeks summary judgment as to two policies it adopted without collective bargaining, one dealing with who would distribute the food trays to patients as between two groups of employees, certified nursing assistants ("CNAs") and dietary personnel, and a second policy concerning "calling off" nurses. The latter seems to mean that ICU nurses would be told not to report for duty (being "called off") when the census (number of patients) in the ICU went below a certain level. See KRMC SJM Memo at 29-36.

The issue presented is whether these policies are "terms and conditions of employment" subject to mandatory collective bargaining under the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and 158(d). The Supreme Court has indicated that Congress intended that the NLRB is to have primary responsibility to interpret these terms, and its determination is to be upheld if "reasonably defensible." Ford Motor Co. v. NLRB, 441 U.S. 488, 496-97 (1979) (NLRB determination that in-plant food services and prices–e.g., cafeterias and vending machines–were terms and conditions of employment subject to collective bargaining upheld). See also S. Nuclear Operating Co. v. NLRB, 524 F.3d 1350, 1357 (D.C. Cir. 2008); Microimage Display Div. of Xidex Corp. v. NLRB, 924 F.2d 245, 253 (D.C. Cir. 1991) (timing of lunch breaks).

KRMC correctly points out that the NLRB has determined that a unilateral change in the terms and conditions of employment constitutes an unfair labor practice only when the change is material, substantial, and significant. See KRMC SJM at 30, citing In re Crittenton Hosp. and Local 40, Office and Prof'l Emps. Int'l Union, AFL-CIO, 342 N.L.R.B. 686 (2004) (policy as to wearing acrylic/artificial nails not a material, substantial, and significant change in terms and conditions of employment).

22

Obviously, and as the Board has held, the materiality of a change is "measured by the extent to which it departs from the existing terms and conditions affecting employees." Crittenton Hosp., 342 N.L.R.B. at 686 (quoting S. California Edison Co., 284 N.L.R.B. 1205 n.1, enforced 852 F.2d 572 (9th Cir. 1988)).

KRMC argues that the CNAs had already been passing out food trays, and that it had a standing practice of calling off nurses when there was a low census. See KRMC SJM Memo at 29, 35. Thus, under that logic, there was no substantial change at all by the adoption of what the NLRB characterizes as unilateral changes without bargaining.

But, as the NLRB points out, it is certainly true that a change in work schedules has been considered a subject of mandatory bargaining. NLRB SJM at 51-52, citing Beverly Health & Rehab. Svcs., Inc. v. NLRB, 297 F.3d 468, 479-83 (6th Cir. 2002).

It would appear, at least on the record developed to date, that there is a genuine issue of material fact as to whether these changes were material, substantial, and significant. First, while it is not perfectly clear, it appears from KRMC's submission that while other employees at one point shared the responsibility of passing out the food trays, the change made it the CNAs' exclusive responsibility.

Second, while KRMC may have had a call off policy, I cannot say, for example, whether the change created a dramatic or minimal impact on the number of hours the affected nurses worked. Obviously, a dramatic reduction in the number of hours they worked would certainly be material. All of this requires a fuller explication of the record than I now have, and I will deny both sides summary adjudication.

23

## IV. CONCLUSION

A separate Order accompanies this Memorandum Opinion.

**John M. Facciola**

Digitally signed by John M. Facciola
DN: c=US, st=DC, ou=District of
Columbia,
email=John_M._Facciola@dcd.uscour
ts.gov, o=U.S. District Court, District
of Columbia, cn=John M. Facciola
Date: 2011.01.14 09:37:42 -05'00'

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE