# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL LABOR RELATIONS
BOARD,

                Petitioner,

      v.

JACKSON HOSPITAL CORP., d/b/a
KENTUCKY RIVER MEDICAL
CENTER,

              Respondent.

Misc. Action No. 07-549 (JMF)

## MEMORANDUM OPINION

This case is before me as a Special Master appointed by the District of Columbia Court of
Appeals, proceeding from a petition by the National Labor Relations Board ("NLRB" or "the
Board"). The NLRB accuses respondent Jackson Hospital, doing business as Kentucky River
Medical Corporation ("KRMC"), of contempt, stemming from KRMC's alleged failure to
comply with an Order of the D.C. Circuit issued on June 3, 2005. On January 14, 2011, I issued
an order which, among other things, granted summary judgment to KRMC as to whether it had
fulfilled its obligation to offer reinstatement to Sandra Hutton and Clara Gabbard, denied
summary judgment to the NLRB on the same issue, and granted summary judgment to KRMC as
to the United Steel Workers of America's ("the Union's") July 27, 2006 request for information.
Before me at this time is <u>Motion of the National Labor Relations Board for Reconsideration of
the Court's January 14, 2011 Order Granting Partial Summary Judgment</u> [#82].[1] The NLRB
asks me to reconsider these orders, to vacate my grants of summary judgment to KRMC, and to

---

[1] Following the first reference to a motion, that motion will be cited by its docket number and
appropriate page number.

grant summary judgment to the NLRB on the reinstatement issue. Upon a review of the record and the relevant law, the motion for reconsideration will be granted.

## I.    BACKGROUND

This case comes with more than a decade of complex procedural history, which, for the sake of clarity, I will recount. In late 2000 and early 2001, the NLRB issued a complaint alleging violations of certain sections of the National Labor Relations Act, 29 U.S.C. §§ 151-169 ("NLRA") by KRMC. Respondent's Motion for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h) [#52], Exh. C at 2. On January 26, 2001, the NLRB filed a petition for injunction under § 10(j) of the NLRA (29 U.S.C. § 160(j)) in the Eastern District of Kentucky.[2] See Ahearn ex rel. NLRB v. Jackson Hosp. Corp., 351 F.3d 226, 228 (6th Cir. 2003) (procedural history).

On January 18, 2002, the district court, per Judge Joseph M. Hood, entered an order granting the petition in part. Ahearn, 351 F.3d at 228. Judge Hood held that the Regional Director of the NLRB "established cause to believe that the hospital was engaging in . . . unfair labor practices," noting that "[b]y granting injunctive relief the Court will be returning the parties to the state of affairs that existed before the alleged unfair labor practices, thus helping to preserve the Board's remedial powers." #52, Exh. C at 57-58. Among other things, the court ordered that "pending the National Labor Relations Board's final resolution of the administrative proceedings in this matter, the Respondent hospital be . . . required to offer interim reinstatement of" Clara Gabbard and Sandra Hutton (née Baker). Id., Exh. C at 60.

On February 20, 2002, ALJ David Evans issued his opinion in the administrative proceeding against KRMC. See Jackson Hosp. Corp., 2002 NLRB LEXIS 61 (NLRB Feb. 20,

---

[2] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

2002).  ALJ Evans determined that KRMC engaged in a number of unfair labor practices, including its discharges of Gabbard and Hutton in 2000. Id. at 376.  Evans ordered that the hospital offer the women "immediate and full reinstatement to their former jobs . . . without prejudice to their seniority or any other rights or privileges that they previously enjoyed, and make those employees whole for any loss of earnings or other benefits" resulting from their termination. Id. at 381.

Also on or about February 19-20, 2002, KRMC extended offers of interim reinstatement to Gabbard and Hutton. Motion of the National Labor Relations Board for Summary Adjudication in Civil Contempt (Including Memorandum of Points and Authorities in Support Thereof) [#60], Exh. 17A.  The letters to both women stated that the hospital was offering "interim reinstatement." Id.  The letters explained that the issue of whether severance was lawful was yet to be decided by the NLRB, but in the meantime, "a court has merely determined that there was 'reasonable cause' and that a temporary reinstatement offer is 'just and proper.'" Id. The letter clarified that, if the hospital prevailed at the end of the administrative proceedings, the hospital would again sever employment. Id.  It stated that, if the hospital did not prevail, then they would "be able to continue [their] employment with the hospital, assuming [their] employment does not end for a lawful reason in the meantime." Id.  It also advised that Gabbard and Hutton could decline interim employment without affecting their right to contest termination:  "If the final outcome of those proceedings is an order that you will be reinstated, then the hospital could be required to reinstate you at that time even if you decline to be reinstated temporarily at this time." Id.  Gabbard and Hutton accepted the offers of interim reinstatement. Id., Exh. 17B.

On April 18, 2002, KRMC filed its exceptions to ALJ Evans' opinion, pursuant to 29 C.F.R. § 102.46. #52, Facts at ¶ 23. In the meantime, on May 3, 2002, KRMC filed a motion with Judge Hood to modify his judgment as to Gabbard, requesting that the court withdraw its grant of interim reinstatement. #60, Exh. 17D. KRMC alleged that Gabbard (1) "repeatedly failed, without legitimate excuse or justification, to attend scheduled return-to-work medical examinations," and (2) "informed one of her co-employees [that] when she return[ed] to the Hospital she [would] 'get even' with those who mistreated her." Id., Exh. 17D at 3-4. On May 24, 2002, Judge Hood granted KRMC's motion based on affidavits by Gabbard's co-workers, finding that Gabbard's "interim reinstatement presents an undue risk to patients and the efficient/orderly operation of the hospital Repondent operates." Id., Exh. 17F.

KRMC filed its answering and reply briefs with the NLRB in June 2002; briefing before the NLRB closed in August 2002. #52, Facts at ¶¶ 24-25. On October 31, 2002, Hutton was notified by KRMC that she was terminated for allegedly failing to report to work without calling on October 13, 2002. #60, Exh. 17G.

On September 30, 2003, the NLRB panel issued its decision, affirming most of ALJ Evans' opinion, including the order to reinstate Gabbard and Hutton. Jackson Hosp. Corp., 340 NLRB 536, 537 (NLRB 2003). On December 5, 2003, the Sixth Circuit issued its decision in Ahearn v. Jackson Hospital, 351 F.3d 226 (6th Cir. 2003), affirming Judge Hood's decision on the 10(j) proceeding.[3]

On January 13, 2004, KRMC filed its petition with the District of Columbia Circuit Court of Appeals. *Petition for Review of an Order of the National Labor Relations Board*, Jackson

---

[3] There is no indication that the Sixth Circuit was notified of Judge Hood's modification of his judgment with respect to Gabbard.

Hosp. v. NLRB, No. 04-1019 (D.C. Cir. Jan. 14, 2004).[4]  Over the course of the next year,

KRMC filed four unopposed motions for extensions of the briefing schedule, which were

granted; the last deadline set for KRMC's initial brief was January 18, 2005. *Clerk's Order*,

Jackson Hosp. v. NLRB, No. 04-1019 (D.C. Cir. Dec. 15, 2004).  After KRMC missed its

January deadline, the NLRB filed a motion for judgment by default to enforce the order of the

NLRB and dismiss KRMC's petition for review on February 4, 2005. *Motion of the National*

*Labor Relations Board for Judgment by Default Enforcing the Order of the National Labor*

*Relations Board and Dismissing the Company's Petition for Review*, Jackson Hosp. v. NLRB,

No. 04-1019 (D.C. Cir. Feb. 4, 2005).  In its brief, the NLRB stated that it had been in talks with

KRMC for the prior eleven months in an attempt to settle the matter, and that on February 3,

KRMC's counsel, Don Carmody, told the NLRB that KRMC was prepared to abandon the

appeal and to work out backpay issues; however, KRMC still had not made all of the necessary

reinstatement offers, nor had they extended a written offer for settlement. Id. at ¶ 10.

On February 23, 2005, KRMC filed its opposition, claiming that the NLRB

misrepresented the situation; it claimed that Carmody had an intervening family crisis that

slowed the process. *Response to Motion of the National Labor Relations Board for Judgment by*

*Default Enforcing the Order of the National Labor Relations Board and Dismissing the*

*Company's Petition for Review and Unopposed Cross-Motion Seeking Approval of Voluntary*

*Withdrawal of Petition for Review*, Jackson Hosp. v. NLRB, No. 04-1019, at 2-4 (D.C. Cir. Feb.

23, 2004).  KRMC also stated that it had spoken to NLRB counsel that day, and that the NLRB

agreed that KRMC would file an "Unopposed Cross-Motion Seeking Voluntary Withdrawal of

---

[4] On February 11, 2004, the NLRB filed a petition for enforcement of the Board's order; the
court of appeals consolidated the two cases shortly thereafter.  See Clerk's Order, NLRB v.
Jackson Hospital, No. 04-1046 (D.C. Cir. Feb. 13, 2004).

Peititon for Review," which was filed as incorporated with the opposition. Id. at 6. The same day, the NLRB filed an opposition to the motion to withdraw, stating that, after conferring with other NLRB counsel, the counsel with whom Carmody spoke attempted to contact him to withdraw the Board's agreement, but KRMC's opposition and motion had already been filed. *Opposition of the National Labor Relations Board to Petitioner's Motion to Withdraw Its Petition for Review*, Jackson Hosp. v. NLRB, No. 04-1019, at ¶ 4 (D.C. Cir. Feb. 23, 2005).

Finally, on June 3, 2005, the District of Columbia Circuit issued a *per curiam* opinion granting the NLRB's motion for a default judgment, and denying KRMC's motion to withdraw. *Per Curiam Order*, Jackson Hospital v. NLRB, No. 04-1019 (D.C. Cir. June 3, 2005). One and a half years later, the NLRB filed the instant petition to find KRMC in civil contempt. *Petition of the National Labor Relations Board for Adjudication in Civil Contempt and for Other Civil Relief*, Jackson Hosp. v. NLRB, No. 04-1019 (D.C. Cir. Jan. 16, 2007).

## II. THE ORDERS ON SUMMARY JUDGMENT AS TO THE REINSTATEMENT OF HUTTON AND GABBARD WILL BE VACATED, AND SUMMARY JUDGMENT WILL BE GRANTED TO THE NLRB

Upon a review of my decision granting summary judgment to KRMC on the issue of whether it satisfied its obligations to reinstate Hutton and Gabbard, I find that I misinterpreted the law involved in the proceedings. Thus, that grant of summary judgment will be vacated, and summary judgment will be denied. Furthermore, I have determined that KRMC is in civil contempt of the court of appeals' June 3, 2005 Order as a matter of law. Therefore, I will vacate the denial of summary judgment to the NLRB, and summary judgment will be granted.

**A.** **KRMC has not complied with the D.C. Circuit's June 3, 2005 Order**

      1.      The decision in the § 10(j) district court proceeding has no binding effect on the NLRB decision, and is not *res judicata*

In my Memorandum Opinion of January 14, 2011, I held that Judge Hood's order was a final judgment, which barred the parties to the case "from any effort to relitigate in another forum what was litigated before him." NLRB v. Jackson Hosp., 2011 U.S. Dist. LEXIS 3736, at *22-23 (D.D.C. Jan. 14, 2011). My understanding of the nature of the § 10(j) proceeding, however, was flawed. Upon reconsideration, I have determined that the decision by Judge Hood is entirely separate from and non-binding upon that by ALJ Evans and the Board.

Section 10(j) of the NLRA, grants that the NLRB:

> shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States . . . within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).

In a proceeding seeking temporary relief under § 10(j), the court will determine whether (1) there is "reasonable cause" to believe an unfair labor practice took place, and (2) whether temporary relief is necessary and appropriate. See Coronet Foods, Inc. v. NLRB, 981 F.2d 1284, 1286 (D.C. Cir. 1993).

In Coronet, the company claimed that a denial of temporary relief in a § 10(j) proceeding—in this case, the restoration of a trucking department—collaterally estopped the NLRB from ordering that same relief in its final decision. Id. at 1287. The court stated that the issue preclusion argument failed because the issue before the district court was not the same

issue that was ultimately before the Board. Id.  While the pleas and language used in both the §

10(j) proceeding and that before the NLRB may have been the same, "the issues themselves were

substantively different." Id.  Furthermore, even if one were to regard the issues as essentially the

same, "case law under the NLRA appears to include no instance of the Board having been bound

in the manner Coronet urges." Id. at 1288.[5]

The circumstances in this case are slightly different, in that the district court did grant the

temporary relief requested by the NLRB; that is where it is easy to lose the forest for the trees.  I

am convinced now, however, that the decision in the district court was completely non-binding

on the NLRB decision, such that the order for reinstatement by the Board created a new

obligation on the part of KRMC to comply.

> 2.  The offer tendered in February 2002 was for temporary reinstatement,
> which does not satisfy the Board's Order, enforced by the D.C. Circuit, for
> full reinstatement

Closely tied to the issue of whether Judge Hood's decision was *res judicata* is the

question of the extent of his order in the § 10(j) proceeding.  The NLRB alleges that the order in

the district court merely provided for "interim reinstatement," which was not sufficient to satisfy

the Board's later order for full reinstatement of Gabbard and Hutton. Memorandum of the

National Labor Relations Board in Support of Motion for Reconsideration [#83] at 16.  KRMC

counters that the "interim" or "temporary" relief awarded in the § 10(j) proceeding is "a

distinction without a difference in this case because the offer of reinstatement . . . was both 'full'

and 'non-temporary.'" #84 at 4.  KRMC bases this argument on the fact that the reinstatement

---

[5] The Coronet court did reject the Board's argument that Coronet waived its defense of issue
preclusion because it failed ever to raise the issue before the Board, noting that it was sufficient
that "Coronet (1) informed the Board in its brief that 'an evidentiary hearing [on the undue
hardship issue] was held [in the district court], whereupon the matter was fully litigated' and
(2) presented to the Board excerpts from the district court's decision on the undue burden
matter." Id. at 1287 n.4.

was only temporary insofar as it could not be permanent until the NLRB succeeded in its administrative action. Id.

The complex history of this case and the coincidence of certain actions did make it seem, at first, that KRMC might be right, and that "interim" reinstatement is no different from "full" reinstatement, releasing KRMC from any further obligations. For example, the fact that ALJ Evans' decision issued almost simultaneously with KRMC's offers of interim reinstatement to Gabbard and Hutton made it easy to confuse which of the two orders KRMC was complying with at the time. See section I, supra. Now that I have a greater grasp of the procedural law, however, I see that KRMC is incorrect, and that the distinction does, in fact, have a difference.

The NLRB cites another application for enforcement proceeding the Board brought against KRMC in the Sixth Circuit. See NLRB v. Jackson Hosp. Corp., 557 F.3d 301 (6th Cir. 2009). One of the issues in that case concerned the calculation of backpay for one of the reinstated employees. KRMC objects that, because it is a backpay issue, it is irrelevant to this case. #84 at 8. However, backpay is based on a calculation from when an employer makes a "valid offer of reinstatement" to an employee. Consol. Freightways v. NLRB, 892 F.2d 1052, 1055 (D.C. Cir. 1989). The definition of a "valid offer of reinstatement" is pertinent to this case.

In the Sixth Circuit case, KRMC argued that the offer of temporary interim reinstatement made to employee Lisa Noble, which she rejected, tolled its backpay obligation to her. Jackson Hosp., 557 F.3d at 306. The Board had determined otherwise:

> Respondent argues that Noble's rejection of Respondent's February 2002 offer released Respondent from any backpay obligation from the date the offer was rejected. Respondent cites Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 238-239, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982) in support of its argument that an employee's rejection of an employer's "valid offer of reinstatement" tolls the employer's backpay obligation. Respondent acknowledges, however, that research revealed no

> cases in which an employee's rejection of an offer of interim employment made pursuant to a Section 10(j) injunction is considered within the context of tolling an employer's backpay obligations.

Kentucky River Med. Ctr., 352 NLRB 194, 204 (NLRB 2008), abrogated on other grounds by New Process Steel, L.P. v. NLRB, 130 S. Ct. 2635, 2652 (2010).

The Sixth Circuit affirmed the Board. "The purpose of an offer to reinstate is to undo the employer's wrong by restoring the employees to the position they would have occupied before the wrong occurred." Jackson Hosp., 557 F.3d at 309-10 (quoting Morvay v. Maghielse Tool & Die Co., 708 F.2d 229, 233 (6th Cir. 1983)) (punctuation omitted); see also Ridgely Mfg. Co. v. NLRB, 510 F.2d 185, 187-88 (D.C. Cir. 1975) (same). Thus, the court noted, there are two steps to determining the sufficiency of a reinstatement offer: (1) whether there is a "genuine offer of full reinstatement" restoring seniority and benefits, which is "permanent, and not temporary," and gives the employee sufficient time to accept, and (2) whether "this genuine offer of full and permanent reinstatement [is] specific, unequivocal, and unconditional." Id. at 310 (internal citations omitted). Noble's offer of reinstatement made pursuant to the § 10(j) injunction in the district court failed; it was "temporary and not permanent employment," and "the offer expressly stated that, were Jackson Hospital to win at a later stage in the litigation, it would fire her again." Id. The court determined that treating the offer as "genuine and unconditional" would "contravene the Supreme Court's decree that 'making [employees] whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." Id. (quoting Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197 (1941)). Thus, Noble's refusal of the temporary reinstatement offer did not toll the hospital's obligation to pay backpay up to the date it offered her full reinstatement.

The D.C. Circuit has come to a similar position. In Oil, Chemical, and Atomic Workers Int'l Union v. NLRB, 547 F.2d 598 (D.C. Cir. 1976), the court reversed a Board decision that

denied backpay to employees who refused their employer's temporary offer of reinstatement pursuant to a § 10(j) injunction. The court determined that, in light of the fact that "[c]learly implicit in the June 9 letter was the message that the offer was to a temporary position and extended only for the life of the then-under-challenge § 10(j) order," the employees were under no obligation to leave their interim positions to remain eligible for backpay. Id. at 605. The court also noted that, "[i]f the Board's decision were construed to hold that a temporary offer of reinstatement on the part of an employer tolls backpay liability, this would discourage resort to the § 10(j) procedure" because "what was intended as a protective remedial provision . . . would instead have the peculiar effect of limiting the scope of the backpay remedy that would otherwise be available." Id. at 601 n.3.

The D.C. Circuit has repeatedly declared that, when the NLRB issues a make-whole order requiring reinstatement and backpay, the offer must be "firm, clear, and unconditional." Halle Enters. v. NLRB, 247 F.3d 268, 271 (D.C. Cir. 2001) (quoting Consol. Freightways, 892 F.2d at 1056). Furthermore, "[i]t is the employer's burden to establish that it made a valid offer of reinstatement." Id. (quoting Roma One Enters., 325 NLRB 851, 852 (NLRB 1998)).

While backpay is not at issue in this case, whether temporary interim reinstatement can be qualitatively the same as "full reinstatement" is. The conditions placed on the reinstatement convince me that it is not. As noted above, the letters to Gabbard and Hutton use the terms "interim reinstatement," "temporary reinstatement offer," and "temporarily returning." #60, Exh. 17A. As in the cases discussed above, had the hospital prevailed in the administrative proceedings, Gabbard and Hutton would have been terminated again. Id. Given that the employees could not be sure when the proceedings would end, and when they could again find

themselves out of work, I find it difficult to conclude that the reinstatement was "unconditional" in light of the case law.[6]

Therefore, I vacate my earlier holding that KRMC had satisfied its reinstatement obligations under the June 3, 2005 Order to Gabbard and Hutton and conclude to the precise contrary, there is no genuine issue of material fact that the reinstatement offered Gabbard and Hutton was inadequate as a matter of law.

I appreciate that this determination might render moot whether KRMC had any duty to bring the intervening facts surrounding the alleged misconduct of both Gabbard and Hutton to the attention of the NLRB or the D.C. Circuit. I nevertheless will now speak to that issue to fulfill completely my responsibility to that Court. Furthermore, I wish to establish firmly that there are no genuine issues of material fact that remain with regard to the reinstatement of these two employees that would keep me from granting summary judgment to the NLRB.

**B.      KRMC has waived its objections by failing to raise them before the Board**

The NLRB alleges that KRMC "has effectively waived its right to presently challenge [Gabbard and Hutton's] entitlement to 'full reinstatement' under the D.C. Circuit Court's judgment," on the basis of the intervening terminations, because KRMC never challenged the earlier orders on that ground. #83 at 15. KRMC dismisses any argument that it had a duty to present the evidence. #84 at 14.

KRMC is incorrect in claiming that it had <u>no</u> obligation to bring forward evidence concerning the reinstatement of Gabbard and Hutton, insofar as KRMC knew that it did not intend to offer full reinstatement to these employees whatever the decision of the Board. If

---

[6] It is worth noting that the Board did not issue its final order affirming (with modifications) ALJ Evans' order until Gabbard and Hutton had both been temporarily reinstated and terminated. Now that the procedural background is clear to me, I see that the temporary reinstatements in 2002 could not be said to have "complied" with an order that did not yet exist.

KRMC wished to challenge the order of the Board to reinstate Gabbard and Hutton on the basis of alleged misconduct, it was obligated to put that challenge on the record.

In considering whether this court may consider the alleged misconduct and subsequent terminations of Gabbard and Hutton, we must first look to the NLRA. Section 160(e) of the NLRA provides that the Board may petition any court of appeals for the enforcement of one of its orders either where the unfair labor practice took place or where the respondent transacts business. 29 U.S.C. § 160(e). Once the petition is filed, the court will have jurisdiction over the proceeding, and will have the power to enter a decree enforcing, modifying, enforcing as modified, or setting aside in whole or in part the order of the NLRB. Id. Section 10(e) also contains certain limitations:

> No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. . . . If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record.

29 U.S.C. § 160(e).

KRMC claims that it could not have sought review of its offers to Hutton and Gabbard before the D.C. Circuit because of the jurisdictional bar at § 10(e). #52 at 15.

If a party wishes to raise an objection to the Board based on evidence that was not on the record at the time of the hearing, there are two provisions in the NLRB administrative procedure rules that allow for that party to move to reopen the record. The first concerns the exceptions a party files to a decision by an administrative law judge, prior to the Board's issuing a decision:

> Upon the filing of timely and proper exceptions, and any cross-exceptions or answering briefs . . . the Board may decide the matter forthwith upon the record, or after oral argument, or may reopen the record and receive further evidence before a Member of the Board or other Board agent or agency, or may make other disposition of the case.

29 C.F.R. § 102.48(b).

The second opportunity for a party to move to reopen the record concerns a motion to reopen the record after the Board has issued its opinion:

> A party to a proceeding before the Board may, because of extraordinary circumstances, move for reconsideration, rehearing, or reopening of the record after the Board decision or order. . . . A motion to reopen the record shall state briefly the additional evidence sought to be adduced, why it was not presented previously, and that, if adduced and credited, it would require a different result. Only newly discovered evidence, evidence which has become available only since the close of the hearing, or evidence which the Board believes should have been taken at the hearing will be taken at any further hearing.

29 C.F.R. § 102.48(d)(1).

In fact, KRMC posits that it did not have a duty to present the evidence surrounding the terminations of Gabbard and Hutton to the Board <u>because</u> it "would have been obligated to seek to reopen the record," and "KRMC could not have satisfied" the threshold requirements to do so. #52 at 13-14. While the NLRB does interpret the requirements of § 102.48(d)(1) narrowly,[7]

---

[7] The NLRB will often reject evidence which was not in existence at the time of proceeding, because subsequent events do not necessarily have any bearing on whether a company would be found to have committed unfair labor practices during the relevant period. <u>See</u> <u>Aeronautical Indus. Dist. Lodge No. 91 Int'l Ass'n</u>, 298 NLRB 325, 325 (NLRB 1990) (determining that respondent failed to demonstrate that the circumstances arising after the close of the hearing would alter the result, and denying motion to reopen the record); <u>Presbyterian Hosp. in the City of New York</u>, 285 NLRB. 935, 935 n.1 (NLRB 1987) (determining that circumstances arising after the close of the hearing would not alter the result, and denying motion to reopen the record). Furthermore, "[c]ourts normally reverse an agency's decision not to reopen the record only for abuse of discretion." <u>E. Carolinas Broad. Co. v. FCC</u>, 762 F.2d 95, 103 (D.C. Cir. 1985). Nonetheless, the high bar does not change the fact that KRMC failed to avail itself of the necessary procedures.

nevertheless, had the motion to the Board been denied, KRMC would have preserved the issue to

be raised before the court of appeals.  It does not get a pass because the chance of the Board

granting its motion were slim.

KRMC cites Cogburn Health Ctr., Inc. v. NLRB, 437 F.3d 1266 (D.C. Cir. 2006), as

standing for the proposition that KRMC had no obligation "to ask the Board to reopen the

proceedings under either Section 102.48(b) or Section 102.48(d)(1), to admit new evidence that

was only relevant to a portion of the remedy and not the underlying determination." #52 at 14.

This claim is a red herring as to § 102.48(b), and incorrect as to § 102.48(d)(1).

According to the Cogburn decision, 29 C.F.R. § 102.48(b) does not create a requirement

to bring to light new evidence at that time during the intervening period following an ALJ's

decision and prior to the Board's issuing an order:

> The Board argues that Cogburn could have alerted the Board to the
> "changed circumstances" during the three-year interval between
> the ALJ's decision and the Board's order. . . . Nothing in the
> Board's rules required Cogburn to advise the Board of every
> changed circumstance in its business operation and workforce
> between the date of the ALJ's decision and the Board's final
> disposition of the case.

Cogburn, 437 F.3d at 1272.  But see NLRB v. USA Polymer Corp., 272 F.3d 289, 295 (5th Cir.
2001).[8]

_____

[8] The USA Polymer court held that the Board did not abuse its discretion when it denied a
motion to reopen the record one month following the Board's decision, when the company
could have made a motion to reopen the record at any point during a three-year period between
the ALJ's opinion and the Board decision:

> Section 102.48(b) grants the NLRB wide discretion in the manner
> in which it deals with appeals from decisions of the ALJ and
> permits the Board to entertain motions to reopen the record in
> order to receive evidence of changed circumstances. At oral
> argument, both Polymer and the NLRB agreed that the Board's
> procedural rules would have permitted Polymer to file a motion to
> reopen or update the record prior to the Board's decision.
> Although there is no clear procedural vehicle for such a motion, we

The fact that a party is not necessarily obligated to move to reopen the record during the particular period of time between the ALJ's decision and the Board's order is irrelevant to the present case. In Cogburn, the question was one of the timeliness of a motion to reopen the record that the company did make under § 102.48(d)(1). Id. at 1271-72. Cogburn does not stand for the proposition that a respondent is not obliged to move to reopen the record if that respondent plans to rely on facts not in the record as a defense for its failure to comply with an enforcement order from the court of appeals. In fact, § 10(e) would seem to imply the opposite. What the Cogburn decision reflects is that, following the Board's refusal to grant a motion to reopen the record, Cogburn was able to appeal the denial to the D.C. Circuit, which remanded the case to the Board to reopen the record. Id. at 1274.

KRMC had two opportunities to move the Board to reopen the record so that it could put forth evidence regarding Gabbard and Hutton's alleged misconduct, and it did not. See Guard Publ. Co. v. NLRB, 571 F.3d 53, 59 n.4 (D.C. Cir. 2009) ("Because the company did not object to the ALJ's finding before the Board . . . we are without jurisdiction to consider that objection now. See 29 U.S.C. § 160(e). Moreover, because the company also failed to raise that objection in its briefs before this court . . . it has twice waived any argument it might have had.") (internal citations omitted). KRMC failed even to submit an initial brief before the court of appeals. Had the court of appeals found that there was a compelling reason for the evidence behind Gabbard and Hutton's terminations to enter the record, such that it would impact the NLRB decision, it would have remanded the case. As it was, it did not have that opportunity.

---

agree with the parties' interpretation of the Board's regulations. Polymer could have submitted a motion to update the record at any time before the Board's decision, but made no such motion until a month after that decision.

USA Polymer, 272 F.3d at 295.

KRMC argues that, "given the high standard required to reopen the record under the Board's regulations, the NLRB would have protested as vigorously then as it does now to the presentation of evidence." #84 at 13. This position appears to boil down to a claim that KRMC should be permitted to put its evidence surrounding the terminations of Gabbard and Hutton into the record now because it would have been too difficult earlier. But, a party cannot be excused from trying to circumvent high evidentiary standards by waiting until it is challenged in a contempt proceeding, when there is a high probability that its evidence, had it been presented, would have compelled the pertinent tribunal to modify its decision.

KRMC further insists that its failure to present the evidence to the Board is irrelevant, because, "[a]s a party to the Section 10(j) proceedings, the Board remained equally aware of the factual position taken by KRMC with regard to Gabbard," and "the Board possessed equally relevant information regarding Hutton's termination of employment in October 2002." #84 at 14.

In <u>Coronet</u>, discussed <u>supra</u>, Coronet made the argument that the Board abused its discretion in failing to consider the decision of the district court, which held that there was an undue burden in implementing the temporary relief because of financial hardship. <u>Coronet</u>, 981 F.2d at 1287. Rejecting that argument, the court stated that Coronet "bears the burden of production and persuasion on the hardship defense it asserts." <u>Id.</u> at 1288. The court noted, "Even if Coronet could be excused for failing initially to produce hardship evidence before the ALJ, the ALJ's decision alerted Coronet to the need for proof in the administrative record. Nevertheless, the company failed to petition the Board to reopen the record." <u>Id.</u> The court held that "it was no abuse of discretion for the Board to decline to assume itself a proof burden properly assigned to the company." <u>Id.</u>

The NLRB was "aware" of Coronet's financial hardship position from the § 10(j) proceeding (the company went so far as to submit a copy of the § 10(j) decision to the ALJ prior to his ruling), just as the NLRB was aware in the present case of KRMC's positions on Gabbard and Hutton. See Coronet, 981 F.2d at 1286. Coronet's failure was in making no attempt to formally enter its factual evidence into the record before the NLRB; KRMC made the same mistake. While ALJ Evans' opinion issued before the terminations took place, Gabbard's alleged misconduct and termination occurred before the record closed, and before KRMC had filed its answering and reply exceptions; Hutton's alleged misconduct and termination occurred a full eleven months before the Board affirmed ALJ Evans' decision. #60, Exh. 17D-G. KRMC was aware that ALJ Evans' order required reinstatement of Gabbard and Hutton, and that, to the extent the order was affirmed, it would create a new obligation based on the Board's order.

KRMC claims that the Board's position "flies in the face of logic," in that "reinstated employees would be entitled to engage in whatever inappropriate, unlawful, disruptive conduct they wished to," and yet an employer who was found to have committed unfair labor practices would be obligated to return that person to work. #84 at 9.[9] KRMC notes in its opposition to the motion for reconsideration that § 10(c) of the NLRA states that "[n]o order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause." 29 U.S.C. § 160(c); #84 at 6. KRMC further provides a litany of cases[10]

---

[9] KRMC does not consider the flipside of that proposition—that, were the initial, interim reinstatement sufficient, long before the Board's final order, an employer could reinstate an employee, swiftly terminate that employee under pretext, and the only recourse for the employee and the Board would be a fresh administrative proceeding.

[10] NLRB v. Magnusen, 523 F.2d 643, 645-46 (9th Cir. 1975); NLRB v. Breitling, 378 F.2d 663, 664-65 (10th Cir. 1967); see also Precision Window Mfg., Inc. v. NLRB, 963 F.2d 1105, 1108-09 (8th Cir. 1992); Marshall Durbin Poultry Co., 310 NLRB 68, 69-70 (1993), enforced in

that it claims "clearly establishes that intervening misconduct may deprive an employee of the right to restatement." #84 at 6. The cases listed, however, have in common that, at some point, the misconduct entered the record before the Board. The ALJ, the Board, or the circuit court contemplating enforcement had the opportunity to consider the facts in evidence. It cannot be deemed sufficient for the Board and the court merely to take KRMC at its word; after all, the terminations that gave rise to the unfair labor proceeding were also claimed to be for cause. If intervening circumstances cause an imposed remedy to become burdensome, it is the responsibility of the party who is the subject of the Board's investigation to put those circumstances on the record in order to preserve its objections.

KRMC's counsel, Don Carmody, testified in his deposition why he never addressed the issue of Hutton's firing with the D.C. Circuit:

> A. It was my belief at the time that if we were to do that, that the NLRB would take the position that that was something that was more appropriate to be determined in a compliance specification proceeding in the event that the Court of Appeals enforced the Board's order. That was my legal judgment.
>
> Q. And that was based on conversations with anybody at the Board, or what was that based on?
>
> A. It would have been in -- I would have taken into account conversations that I had had contemporaneously with John Grove, compliance officer in Region 9, it was based upon my legal judgment that that is what -- that that would be a waste of time, quite frankly.
>
> Q. What did Grove tell you that you relied on?
>
> A. I don't remember exactly. I just remember that he was adamant that it was not -- that they were going to -- that the regional office, the compliance personnel in the regional office,

---

relevant part <u>Marshall Durbin Poultry Co. v. NLRB</u>, 39 F.3d 1312 (5th Cir. 1995); <u>East Island Swiss Products, Inc.</u>, 220 NLRB 175, 176 (1975); <u>Uniform Rental Serv., Inc.</u>, 161 NLRB 187, 190 (1966), <u>enforcement denied</u> <u>NLRB v. Uniform Rental Serv., Inc.</u>, 398 F.2d 812, 813 (6th Cir. 1968).

meaning himself, was going to pursue and seek her reinstatement, that he was pretty -- he was pretty adamant that that was fixed.

#52, Exh. K at 184-85.

He further testified as to the failure ever to raise the issue of Gabbard's termination:

Q.  And why didn't you go to the Court of Appeals, then, to have them reconsider or have them modify the relief that they had ordered or were going to order?

A.  For the same reason as was my recommendation to not do that in the case of [Hutton].  It was my expectation that like in the case of [another terminated employee], that it would be dealt with in a compliance specification proceeding.  And that I do recall being discussed with Mr. Grove.  I had conversations with Mr. Grove where that was discussed, and I was basically saying to him that it would be our intention to raise in -- eventually, in a compliance specification proceeding, for a determination of whether or not we had good cause for terminating these individuals after they had been reinstated in connection with the 10(j) order.  I had asked Mr. Grove on a number of occasions for an explanation for why the issues of reinstatement in compliance with the court order was being dealt with differently as between and among individuals. . . . And I had no explanation ever offered, other than that's what contempt says we've got to do.

#52, Exh. K at 188-89.

KRMC took a legal gamble in making the assumption that the NLRB would not pursue charges of civil contempt for its failure to comply with the enforcement of the Board's order pertaining to Gabbard and Hutton.  That was a mistake.  It is not the responsibility of this Court to revise the procedural rules in order to give KRMC another chance.

## C.    Contempt proceedings are appropriate when a reinstatement order is violated

KRMC claims that "issues involving reinstatement or backpay awards are regularly addressed in compliance specification hearings." #84 at 12.  It goes so far to impute "bad faith or dilatory motive" on the part of the Board. Id. at n.5; see also Id. at 14.  As KRMC notes, the

Board will often resort to administrative compliance hearings, particularly for backpay calculation issues.

Several criteria are considered in determining whether contempt or further administrative proceedings are more appropriate under particular circumstances, as is indicated in the National Labor Relations Board Casehandling Manual, Part Three: Compliance Proceedings (1993) ("NLRB CHM"). In § 10632.5(c), the Board indicates that certain conflicts, such as a refusal to furnish payroll records to compute backpay, may be better handled through a compliance specification. NLRB CHM § 10632.5(c). On the other hand, however, "contempt will likely be the only recourse when the alleged conduct violates the affirmative, nonmonetary provisions of a decree but not the Act (for example, notice posting, *reinstatement*, expungement of files, restoration of status quo ante, and execution of contract)." Id. (emphasis added). Furthermore, the Board states unequivocally that, "[a]bsent expeditious and satisfactory resolution" of a reinstatement issue, "the Region should submit the case to the Contempt Litigation and Compliance Branch . . . with a recommendation as to whether contempt proceedings are warranted to achieve compliance with the Board's reinstatement order." Id. at § 10628.

Thus, the implementation of contempt proceedings against KRMC on the basis of its failure to reinstate Gabbard and Hutton is consistent with standard NLRB practice. Furthermore, the court owes deference in the Board's choice of proceedings. See NLRB v. Truck Drivers and Helpers, No. 29149, 1969 WL 11151, at *19 (2d Cir. 1969) ("The mere fact that an administrative procedure is available to the NLRB, or that previous conduct by the NLRB might have led [respondent] to expect administrative treatment, does not in any way vitiate the Board's power to seek enforcement of a court decree through civil contempt proceedings. . . . The fact

that the NLRB exercises its option to seek an adjudication of civil contempt for violations of binding decrees of the courts is not improper.") (internal citations omitted).

### D.    It is not necessary for the Board to show "Contumacious Conduct"

I wish briefly to address KRMC's claims that the NLRB "fails to produce any evidence demonstrating contumacious conduct." #84 at 3, 9.  "Contumacious conduct" may be defined as a "willful disobedience of a court order." Black's Law Dictionary 292 (7th ed. 1999).  A contumacious intent is not important in the context of civil contempt. In re Brown, 454 F.2d 999, 1007 (D.C. Cir. 1971).  So-called "three-stage civil contempt" consists of

> (1) issuance of an order; (2) following disobedience of that order, issuance of a conditional order finding respondent in contempt and threatening to impose a specified penalty unless respondent purges himself of contempt by complying with prescribed purgation conditions; and (3) exaction of the threatened penalty if the purgation conditions are not fulfilled.

Oil, Chemical & Atomic Workers Int'l Union v. NLRB, 547 F.2d 575, 581 (D.C. Cir. 1976).

We are at the second stage, where "the longstanding rule is that good faith or lack of willfulness is not a defense that the petitioner must negate." Id.  See also McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) ("The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court.").

As shown above, KRMC has failed to comply with the court of appeals' enforcement order, and has failed to raise any factual questions as to their reasons for failing to comply. Whether that failure was accompanied by willfulness is irrelevant.

### E.    Summary judgment for the NLRB is appropriate as a matter of law

To prevail on a motion for summary judgment, a party must establish, on the basis of the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on such a motion, the Court views the evidence in the light most favorable to the non-moving party. <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 150 (2000). A party opposing a motion for summary judgment must point to more than just "a scintilla of evidence" supporting his position; "there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).

To prevail on its claim of civil contempt, the NLRB must produce "clear and convincing evidence in support of its allegations of contemptuous conduct." <u>NLRB v. Blevins Popcorn Co.</u>, 659 F.2d 1173, 1183 (D.C. Cir. 1981). As noted above, good faith or lack of willfulness are irrelevant to a defense against a claim of civil contempt. <u>Supra</u> at section II.D.

The relevant facts as they pertain to the issue of Gabbard's and Hutton's reinstatements are not in dispute. I say "relevant facts," because I have come to the conclusion that, as a matter of law, whether or not Gabbard or Hutton engaged in the alleged misconduct is not relevant to my decision. What is relevant is that KRMC never made an attempt to put the facts of the alleged incidents of misconduct and subsequent terminations into the record before the Board. Furthermore, KRMC defaulted on its petition for reconsideration of the Board's decision that was before the court of appeals, and the court of appeals issued an order enforcing the Board's decision. The Board's decision, as enforced by the court of appeals, ordered KRMC to, "[w]ithin 14 days from the date of this Order, offer to the following-named employees full reinstatement to their former jobs or, if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously

enjoyed: Clara Gabbard[,] Sandra (Barker) Hutton [etc.]." <u>Jackson Hosp.</u>, 340 NLRB at 537.

KRMC has never offered full reinstatement to Gabbard or Hutton; the reinstatement offered in compliance with the § 10(j) injunction was, as a matter of law, conditional, and did not satisfy the requirement of full reinstatement under the Board's decision.

Therefore, I am granting summary judgment to the NLRB, and holding that, as a matter of law, KRMC is in civil contempt of the June 3, 2005 order of the D.C. Circuit with regard to the reinstatement of Clara Gabbard and Sandra Hutton. I will reserve any recommended remedy for my final report to the court of appeals.

## III.    THE GRANT OF SUMMARY JUDGMENT TO KRMC REGARDING THE INFORMATION REQUESTED BY THE UNION ON JULY 27, 2006 WILL BE VACATED

The NLRB urges me to vacate my grant of summary judgment to KRMC on the allegation concerning the Union's July 27, 2006 request for information, because there exists a genuine issue of material fact as to whether all of the information requested was provided by KRMC. #82 at 2. KRMC questions the validity of Randy Pidcock's affidavit, and states that the Court properly concluded that no reasonable inference could be made "that KRMC committed contempt of court by failing or refusing to produce material requested by the Union." #84 at 15. The NLRB counters in its reply brief that KRMC "avoid[s] any reference at all to the copy of the information purportedly gathered by [Naomi] Mitchell and given to Carmody for his own records," alleging that "no such information was ever gathered . . . to, in turn, give to the Union in response to its July 27, 2006 request." <u>Reply to Jackson Hospital's Response in Opposition to National Labor Relations Board's Motion for Reconsideration of Court's January 14, 2011 Order Granting Partial Summary Judgment</u> [#88] at 15.

Now that we have scheduled a hearing in this case, I am inclined to err on the side of caution. Upon reconsideration, I am not so confident that there is no genuine issue of material

fact.  Instead, each side should have the opportunity to present evidence on this question.

Therefore, I will vacate my grant of summary judgment to KRMC as to whether it provided the

information requested by the Union in its July 27, 2006 request.

**IV.**     **CONCLUSION**

A separate Order accompanies this Memorandum Opinion.

<br>

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE